894 F.2d 363
 58 USLW 2434, 1990-1 Trade Cases 68,896
 Myron J. PALERMO and Three Sisters Investments, Ltd., a
corporation, Plaintiffs-Appellants,
v.
FIRST NATIONAL BANK AND TRUST COMPANY OF OKLAHOMA CITY and
Federal Deposit Insurance Corp., in its corporate capacity
and as receiver of the First National Bank & Trust Co. of
Oklahoma City, N.A., Defendants-Appellees,
and
Clinton A. Burr, Defendant.
 No. 88-1904.
 United States Court of Appeals,
Tenth Circuit.
 Jan. 18, 1990.
 
 Stephen R. Stephens (Terry W. Tippens with him on the brief), of Fellers, Snider, Blankenship, Bailey & Tippens, Oklahoma City, for plaintiffs-appellants.
 Ross A. Plourde (V. Burns Hargis with him on the brief), of Reynolds, Ridings & Hargis, Oklahoma City, for defendants-appellees.
 Before TACHA, GARTH* and BALDOCK, Circuit Judges.
 BALDOCK, Circuit Judge.
 
 
 1
 This case requires us to decide whether a bank's insistence that a customer guarantee certain indebtedness of a related entity before the bank will renew the customer's loan, violates the prohibition against bank tying and reciprocity arrangements contained in 12 U.S.C. Sec. 1972. We hold that such an arrangement does not violate Sec. 1972 under the facts of this case because plaintiffs-appellants have failed to establish an anticompetitive practice.
 
 I.
 
 2
 For purposes of our review of the district court's order granting summary judgment in favor of the defendant, we must view the evidence and its reasonable inferences in the light most favorable to the plaintiffs who opposed the summary judgment motion. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88, 106 S.Ct. 1348, 1356-57, 89 L.Ed.2d 538 (1986). Accordingly, for purposes of this analysis, the following facts are deemed established. Plaintiff-appellant Myron J. Palermo is an oil and gas producer based in Houston, Texas and Lake Charles, Louisiana. In addition, he is involved actively in the horse business. Palermo, Mike Caswell,[1] and Billy Underwood, Jr. each owned one-third of the stock of Cup Exploration, Inc. In April 1981, defendant-appellee FDIC's predecessor, First National Bank[2] (the bank) made an unsecured $250,000 loan to Cup Exploration for mineral development activities. After visiting the bank with Underwood to arrange for the loan, Palermo wrote the bank indicating that although Underwood would guarantee the note personally, Palermo and Caswell would not. Palermo signed the note in his capacity as a corporate officer of Cup Exploration, but did not sign the guarantee on the back of the note. The amount of the note varied from $250,000 to $260,000. Rec. vol. I, doc. 39 at 1, p 1(a).
 
 
 3
 In May 1981, the bank loaned Palermo money for his horse business and took a security interest in certain collateral including the race horses. Palermo was the sole maker of the note and it was renewed several times. Id. at 2, p 1(b). Palermo's indebtedness pursuant to this arrangement fluctuated between $150,000 and $575,000 during 1981-82. Id.
 
 
 4
 Cup Exploration defaulted on its note. The bank then insisted that Palermo guarantee the Cup Exploration note or else face nonrenewal of his personal note and foreclosure of the collateral. Palermo attempted to secure credit from two other banks, but was unsuccessful. Palermo Depo. at 32-34, rec. vol. I, doc. 39, ex. E. Palermo testified that he was aware of only two lenders in the region (Penn Square Bank and this bank) that would lend on race horses. Id. Unable to refinance the personal note with another bank, Palermo complied with the bank's demand, signing his name to the guarantee on the back of the Cup Exploration note "under protest." Thereafter, the bank consolidated the Cup Exploration note and Palermo's personal note.
 
 
 5
 Palermo contends that Three Sisters Investments, Ltd., an entity which Palermo serves as an officer and an employee, and which is owned constructively by Palermo's immediate family, also was required to guarantee the consolidated note, which totaled approximately $641,000.[3] When the balance of the consolidated note reached $248,000, "roughly the equivalent of the original Cup [Exploration] Note," Appellants' Brief at 5, the plaintiffs defaulted and filed this action.
 
 
 6
 The district court granted defendant FDIC-Receiver summary judgment on the plaintiffs' bank tying and reciprocity claims. Specifically, the district court examined the relationship between Palermo, Three Sisters and Cup Exploration to determine whether the bank's insistence on a guarantee of the Cup Exploration indebtedness in exchange for the renewal of Palermo's credit constituted an impermissible anticompetitive tying or reciprocity arrangement or permissible protection of the bank's loan assets. Rec. vol. I, doc. 104 at 4. Finding a close relationship between Cup, Palermo and Three Sisters, the court concluded that:
 
 
 7
 [The bank] conditions the renewal of the current loans to Palermo on an agreement to guarantee past debts of a company [ (Cup Exploration) ] for whom plaintiff is a main shareholder. The court concludes that [the bank's] actions constitute a traditional banking practice imposed to protect the bank's security and do not violate the Bank Tying Act. Moreover, no anticompetitive practice has been shown. The bank's interest in protecting its investment is paramount.
 
 
 8
 Id. at 7. After plaintiffs' bank tying and reciprocity claims had been resolved, FDIC-Corporate, as holder of the Palermo note, the Three Sisters' guarantee and various security agreements, reduced its counterclaim on the consolidated note to judgment because the plaintiffs' only defense to payment was based on the alleged bank tying and reciprocity violation. Rec. vol. I, doc. 107 at 2. Plaintiffs appeal from the judgment as later amended. Our jurisdiction arises under 28 U.S.C. Sec. 1291.
 
 II.
 
 9
 12 U.S.C. Sec. 1972 prohibits a bank from imposing certain conditional requirements when granting a customer credit. IX E. Kintner & J. Bauer, Federal Antitrust Law Sec. 68.6(A) at 138 (1989). Section 1972 prohibits tying, reciprocity and exclusive dealing arrangements. Id. Plaintiffs contend that the district court erred by 1) reading Sec. 1972, to require an anticompetitive practice, 2) in the alternative, failing to find that the bank's conduct constituted an anticompetitive practice, and 3) granting summary judgment based on the relationship between Palermo, Three Sisters and Cup Exploration without considering the conflicting nature of the evidence. We review the district court's grant of summary judgment de novo to determine whether "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); Missouri Pac. R.R. v. Kansas Gas & Elec., 862 F.2d 796, 798 (10th Cir.1988). Although the parties in this case differ concerning the liability of the plaintiffs independent of the two guarantees at issue, this dispute does not preclude summary judgment. For "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be a genuine issue of material fact." Anderson v. Liberty Lobby, 477 U.S. 242, 247-48, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) (emphasis in original). A key issue in this case is whether plaintiffs have come forward with sufficient facts to show an anticompetitive practice, an essential element of a Sec. 1972 action, in response to the defendant's summary judgment motion; the failure to make such a showing renders all other facts immaterial and summary judgment in favor of the moving party is required. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 2552-53, 91 L.Ed.2d 265 (1986). Finally, plaintiffs were required to produce sufficient evidence of an anticompetitive practice that, under the applicable law, submission to the trier of fact would have been required. Anderson, 477 U.S. at 250-52, 106 S.Ct. at 2511-12.
 
 III.
 
 10
 In deciding whether Congress intended the statute to reach only anticompetitive conditional requirements, we look first to the language of the statute.
 
 
 11
 12 U.S.C. Sec. 1972. Certain tying arrangements prohibited; ...
 
 
 12
 (1) A bank shall not in any manner extend credit, lease or sell property of any kind, or furnish any service, or fix or vary the consideration for any of the foregoing, on the condition or requirement--
 
 
 13
 (A) that the customer shall obtain some additional credit, property or service from such bank other than a loan, discount, deposit or trust service;
 
 
 14
 * * *
 
 
 15
 (C) that the customer provide some additional credit, property or service to such bank, other than those related to and usually provided in connection with a loan, discount, deposit or trust service;
 
 
 16
 * * *
 
 
 17
 An extension of credit upon the condition that the customer guarantee the note of another customer falls squarely within the terms of the statute. 12 U.S.C. Sec. 1972(1)(C). But requiring such a guarantee may be permissible, provided that it is "related to and usually provided in connection with a loan." Id.
 
 
 18
 Given the myriad of loan arrangements and the lack of specificity in the statute, we review the legislative history for any light which may be shed concerning these supplementary guarantees and the exemption upon which the bank relies. That legislative history indicates that the broad purpose of the statute simply is to guard against possible "misuse of economic power of a bank" which might result in "a lessening of competition or unfair competitive practices." S.Rep. No. 91-1084, 91st Cong. 2d Sess., reprinted in 1970 U.S.Code Cong. & Ad.News 5519, 5535. Congress did "not intend, however, that this provision interfere with the conduct of appropriate traditional banking practices." Id; Clark v. United Bank, 480 F.2d 235, 238 (10th Cir.), cert. denied, 414 U.S. 1004, 94 S.Ct. 360, 38 L.Ed.2d 240 (1973).
 
 
 19
 The legislative history on this point "is sufficiently specific, clear and uniform to be a reliable indicator of intent," Miller v. Commissioner, 836 F.2d 1274, 1282 (10th Cir.1988), because the reach of the statute was an important issue throughout its passage. Indeed, the provision was narrowed on the Senate floor "to exclude from coverage certain specific so-called traditional banking services, i.e. loans, discounts, deposits and trust services." Conf.R. 91-1747, 91st Cong., 2d Sess., reprinted in 1970 U.S.Code Cong. & Ad.News 5561, 5579-80; 116 Cong.Rec. 32124-33 (1970) (debate on narrowing amendment). A customary transaction which links the above traditional banking services is exempt. Conf.R. 91-1747, 1970 U.S.Code Cong. & Ad.News at 5579. For example, the following conditions imposed upon a customer as a precondition for granting a loan are exempt from the provision: 1) insisting upon compensating deposit balances, and 2) imposing limitations upon borrowing capacity to insure the bank will be repaid its loan. 12 U.S.C. Sec. 1972(1)(C), (E); 116 Cong.Rec. 32,125, 32,130 (Remarks of Sen. Bennett). The provision also allows the customer "to negotiate his costs and fees with the bank on the basis of his entire relationship with the bank." 116 Cong.Rec. at 32,125.
 
 
 20
 Given the language of the statute and its legislative history, we must reject the plaintiffs' argument that no anticompetitive practice need be shown. Plaintiffs have not addressed the distinction between requiring proof of an anticompetitive effect versus requiring proof of an anticompetitive practice. We agree with the plaintiffs that under 12 U.S.C. Sec. 1972, they are not required to prove actual anticompetitive effects of the challenged practice, such as a bank's dominance or control over the tying product market or that a substantial volume of commerce is affected. Amerifirst Properties v. FDIC, 880 F.2d 821, 826 (5th Cir.1989); Campbell v. Wells Fargo Bank, 781 F.2d 440, 443 (5th Cir.), cert. denied, 476 U.S. 1159, 106 S.Ct. 2279, 90 L.Ed.2d 721 (1986); Parsons Steel v. First Ala. Bank, 679 F.2d 242, 245 (11th Cir.1982); Costner v. Blount Nat'l Bank, 578 F.2d 1192, 1196 (6th Cir.1978); see generally Jefferson Parish Hosp. Dist. v. Hyde, 466 U.S. 2, 13-16, 104 S.Ct. 1551, 1558-60, 80 L.Ed.2d 2 (1984) (in traditional antitrust action, plaintiff must show that defendant has market power over tying product so as to force purchase of tied product and that a substantial volume of commerce is foreclosed by the tying arrangement). However, plaintiffs must show that the practice complained of is anticompetitive, that the practice results in unfair competition or could lessen competition, and that the practice benefits the bank in some way other than merely allowing the bank additional asset protection. Davis v. First Nat'l Bank, 868 F.2d 206, 207-08 (7th Cir.), cert. denied, --- U.S. ----, 110 S.Ct. 68, 107 L.Ed.2d 35 (1989); Rae v. Union Bank, 725 F.2d 478, 480 (9th Cir.1984); Exchange Nat'l Bank v. Daniels, 768 F.2d 140, 143 (7th Cir.1985) (Sec. 1972 is designed to preserve competition; bank may condition one in-house loan upon another); Parsons Steel, 679 F.2d at 245-46 (Sec. 1972 requires an anticompetitive tying arrangement that benefits the bank; bank may require change in management and ownership of subsidiary before extending additional credit); Tose v. First Penn. Bank, 648 F.2d 879, 897 (3rd Cir.) (Sec. 1972 allows a bank to protect its investment; bank may require change in chief executive officer), cert. denied, 454 U.S. 893, 102 S.Ct. 390, 70 L.Ed.2d 208 (1981); Continental Bank v. Barclay Riding Academy, 93 N.J. 153, 459 A.2d 1163, 1170 (particularly well-reasoned decision applying Sec. 1972), cert. denied, 464 U.S. 994, 104 S.Ct. 488, 78 L.Ed.2d 684 (1983).
 
 
 21
 Requiring plaintiffs to show an anticompetitive practice which benefits the bank is also consistent with the purpose of the statute; to deter a bank from using its economic power to reduce competition or to compete unfairly. With the enactment of the statute,
 
 
 22
 it seems clear that Congress did not intend to "federalize" large segments of existing commercial and banking law, or to impose treble damage liability whenever a federal court might conclude that the specific terms of a loan transaction were onerous or uncommon for some other reason. Section 1972 is not a general regulatory provision designed to insure fair interest rates, collateral requirements and other loan agreement terms. It has a narrow target....
 
 
 23
 Freidco v. Farmers Bank, 499 F.Supp. 995, 1001 (D.Del.1980). Accord Continental Bank, 459 A.2d at 1170. Thus, the reach of the statute is limited not only by statutory exemptions, but also by the statute's purpose. See E. Kintner & J. Bauer, supra, at Sec. 68.6(A), (B) at 138-40.
 
 IV.
 
 24
 In the alternative, plaintiffs contend that they have made a sufficient showing of anticompetitiveness to withstand summary judgment. They suggest that the bank held a regional monopoly on loans for the purchase of horses after the Penn Square Bank collapsed. They continue: "Clearly [the bank] exploited its economic power in trying to rescue itself from a bad loan (the Cup [Exploration] note) by forcing Palermo and Three Sisters to guarantee that note." Appellants' Brief at 19. Conditioning the extension of credit to a bank customer on the requirement that the customer participate in the bank's bad loans to an unrelated customer surely is an anticompetitive practice proscribed by Sec. 1972. Nordic Bank PLC v. Trend Group, 619 F.Supp. 542, 557 (S.D.N.Y.1985). However, that is not what occurred here. During the halcyon days of Palermo's relationship with the bank, Palermo had sought credit on behalf of Cup Exploration, himself and Three Sisters. Sound credit practices include evaluating affiliated debt prior to extending additional credit; not surprisingly, the loan applications in this case contain a section entitled "Affiliated Borrowing Summary," precisely for that purpose. Rec. vol. I, doc. 103, exs. C & D. Palermo's loan application in connection with the horse business dated March 19, 1982, before the bank insisted upon the guarantee, reports the status and amounts of Palermo and Cup Exploration affiliated debt. Id. ex. C. Moreover, given the potentially litigable state of Palermo's personal liability on the Cup Exploration note after several extensions and renewals, the bank sought clarification in the form of a guarantee before it extended additional credit.
 
 
 25
 Section 1972 was not intended to prevent the bank from taking steps to insure adequate security for its loans. See B.C. Recreational Indus. v. First Nat'l Bank, 639 F.2d 828, 832 (1st Cir.1981); McCoy v. Franklin Sav., 636 F.2d 172, 175 (7th Cir.1980). Thus, a bank may require substituted or additional collateral in connection with a customer's loans without violating Sec. 1972. Nordic Bank, 619 F.Supp. at 557; Freidco, 499 F.Supp. at 1002. The case law concerning Sec. 1972 is not to the contrary. For example, when a closely held corporation (with only two stockholders) was the bank's customer, the bank could require the corporation to guarantee the personal liability of the stockholders and even to pay interest on the personal loans of one of the stockholders, provided the bank merely was seeking to protect the value of its investment. Sterling Coal Co. v. United Am. Bank, 470 F.Supp. 964, 965 (E.D.Tenn.1979); see also Dannhausen v. First Nat'l Bank, 538 F.Supp. 551, 563-64 (E.D.Wis.1982) (bank required related purchaser of business to assume debts of seller). Likewise, a bank could require a mortgage as additional security for renewing a previously unsecured loan given a downturn in the customer's financial circumstances. Continental Bank, 459 A.2d at 1170-71.
 
 
 26
 The fact that this bank may have enjoyed market power in horse financing does not mean that it lost its right to review a customer's related loans when deciding whether to renew a performing loan. It would defy economic sense to hold that the bank cannot consider related nonperforming loans when deciding whether to renew performing loans. The bank did not force Palermo to renew his performing loan and hardly can be said to be exploiting its economic position when it became his lender of last resort. See Continental Bank, 459 A.2d at 1171.
 
 
 27
 Plaintiffs contend that the district court should have followed the result in Nordic Bank. In that case, the district court recognized that requiring a customer to guarantee a debt for which the customer was not responsible stated a claim under Sec. 1972. 619 F.Supp. at 557; see also Bruce v. First Fed. Sav. & Loan Ass'n, 837 F.2d 712, 718 (5th Cir.1988) (discussing mechanics of stating a claim under similar antitying provision for thrift institutions, 12 U.S.C. Sec. 1464(q)(1)). The court then declined to grant summary judgment in favor of the bank concerning two guarantees because the record was unclear whether they were obtained to preserve the value of the bank's investment. Nordic Bank, 619 F.Supp. at 557. Also, the district court opinion does not indicate the relationship between the bank customer and the entities whose debt the customer was required to guarantee. In contrast, the record in this case is developed sufficiently with uncontroverted facts to allow such a determination. For reasons that follow, we therefore reject plaintiffs' contention that there was a genuine issue of material fact concerning whether the bank acted to protect its investment in Palermo-related entities.
 
 V.
 
 28
 The bank in this case did no more than evaluate its entire existing relationship with the plaintiffs when it conditioned renewal of Palermo's credit upon obtaining a guarantee of the Cup Exploration indebtedness. We emphasize what this case is not about--a bank requiring one customer to guarantee the debt of another unrelated or incidentally related customer. To the contrary, Palermo, an oil and gas operator and horse breeder, was involved in several commercial activities which required funds. The fact that Palermo did not exercise day-to-day control over all of these activities is insufficient to withstand summary judgment.
 
 
 29
 Palermo was an officer, director and the owner of a one-third interest of Cup Exploration, a corporate venture which acquired oil and gas leases. Palermo Affidavit paragraphs 2 & 3, rec. vol. I, doc. 103 ex. A. Palermo participated in the original loan negotiations and signed the initial loan documents on behalf of Cup Exploration. Palermo-Burr letter dated 4/18/81; Palermo depo. at 19, rec. vol. I, doc. 39 exs. D & E; Promissory Note 457345 dated 4/20/81 in Addendum to Appellants' Brief, ex. A-1. Palermo had written the bank indicating that he would not guarantee the Cup Exploration note, but later executed at least three Cup Exploration renewal notes indicating that he agreed to endorse or guarantee those notes. Promissory Notes 459168 dated 7/20/81, 10/20/81 and 1/20/82, Addendum to Appellants' Brief ex. A-2, A-3 & A-4.
 
 
 30
 Likewise, there is a clear connection between Palermo and Three Sisters. Three Sisters is a family corporation in the commercial horse business. Of the five stockholders, Palermo's wife and three daughters hold 55% of the stock; the other 45% of the stock is held by Palvest, represented by Palermo's brother. Palermo Affidavit p 5, rec. vol. I, doc. 103, ex. A. Palermo is an officer of Three Sisters, as well as an employee. Id. at paragraphs 4 & 5. Paragraph 8 of plaintiffs' amended complaint states:
 
 
 31
 In 1981, Three Sisters obtained a loan from [the bank] evidenced by Promissory Note 459862 (hereinafter the "Three Sisters note"). Palermo personally guaranteed the Three Sisters note. As collateral for the Three Sisters note, plaintiffs gave [the bank] a security interest in several race horses they owned.
 
 
 32
 Amended Complaint p 8, rec. vol. I, doc. 13 at 2. The face of the above promissory note (459862) clarifies the story. Palermo did more than guarantee; he was the sole maker in his individual capacity of the above note. Only after September 30, 1982, did Three Sisters owe a debt to the bank and that was by way of a guarantee. Assuming, without deciding that Three Sisters has standing to complain of a bank tying or reciprocity violation, we must reject the plaintiffs' contention that the district court "could not have properly held that Palermo and Three Sisters were coextensive." Appellants' Brief at 23. The record is replete with evidence linking Palermo and Three Sisters.
 
 VI.
 
 33
 The district court properly granted summary judgment in favor of FDIC-Receiver on plaintiffs' bank tying and reciprocity claims because the plaintiffs were unable to make a showing that the practice complained of was anticompetitive, that the practice was not within the exemption of traditional banking practices in connection with loans. The uncontroverted facts establish that the bank viewed Cup Exploration, Three Sisters and Palermo as affiliated borrowers and permissibly sought to protect its loan assets.
 
 
 34
 AFFIRMED.
 
 
 
 *
 The Honorable Leonard I. Garth, Senior United States Circuit Judge for the Third Circuit, sitting by designation
 
 
 [1]
 Caswell apparently was a partner with Palermo in the Sevens Co., another oil and gas related entity. See rec. vol. I, doc. 103 (loan application dated 3/19/82)
 
 
 [2]
 The bank was declared insolvent in July 1986, and the FDIC was appointed receiver. FDIC-Receiver, FDIC-Corporate and First Interstate Bank and Trust Co. entered into a purchase and assumption agreement. As part of that transaction, FDIC-Receiver sold the asset in question (the Palermo consolidated note) to FDIC-Corporate
 
 
 [3]
 At the time of the consolidation the balance of the Palermo note was approximately $381,000 and the balance of the Cup note was approximately $260,000