928 F.2d 328
 1991-1 Trade Cases 69,386
 Leroy BIEBER; Lynda Bieber, husband and wife; Skull Creek
Ranch, Inc., Bieber Land and Cattle, Inc., a
Montana corporation; Scott R. Bieber,
Individually, Plaintiffs-Appellants,
v.
STATE BANK OF TERRY; Albert S. Brubaker; Sidney K.
Brubaker; Gary Ryti; Bruce A. Fredrickson,
Defendants-Appellees.
 No. 90-35551.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted March 7, 1991.
Decided March 20, 1991.
 
 Arnie A. Hove, Circle, Mont., for plaintiffs-appellants.
 Robert Edd Lee and Bruce A. Fredrickson, Crowley, Haughey, Hanson, Toole & Dietrich, Billings, Mont., for defendants-appellees.
 Appeal from the United States District Court for the District of Montana.
 Before BROWNING, WRIGHT, and FARRIS, Circuit Judges.
 EUGENE A. WRIGHT, Circuit Judge:
 
 
 1
 The district court, finding that none of the transactions between the plaintiffs and the defendant bank amounted to illegal tying under the Bank Holding Company Act, granted the defendants' motion for summary judgment. We agree that the facts alleged were insufficient to support plaintiffs' federal claims.
 
 
 2
 * The plaintiffs own and operate two Montana ranches: Skull Creek Ranch, Inc. (SCR) and Bieber Land and Cattle, Inc. (BLC). Leroy and Linda Bieber actively operate and are the sole shareholders and officers of SCR. Scott Bieber, their son, has been active in the operation of BLC since April 1987 and apparently is now the sole shareholder. At least through March 1987, Leroy and Linda Bieber were president and secretary of BLC.
 
 
 3
 The Biebers had a practice of preparing annual operating budgets for the ranches and using SCR assets to secure any needed loans. In December 1985, Leroy Bieber was advised by the State Bank of Terry that SCR had reached the bank's legal lending limit of $425,000. BLC was virtually free of debt. As a result of negotiations with the bank over SCR's debt situation, BLC borrowed $100,000 from the bank and used the proceeds to reduce SCR's debt.
 
 
 4
 Financial problems continued and further negotiations were held over reducing SCR interest payments. In January 1987, Leroy and Linda Bieber met with the bank to apply for a federal FmHA loan guaranty. To obtain it, the Biebers were required to execute personal guaranties for the SCR debt. On March 17, 1987, two guaranties for $350,000 of SCR's debt were executed, one by the Biebers as individuals and one by BLC, signed by Leroy and Linda Bieber as BLC officers. The FmHA application was rejected.
 
 
 5
 Negotiations over the SCR debt began again. In November 1987, the bank agreed to write down the debt if additional security was provided. The renegotiated loan agreement, signed on November 6, 1987 by Leroy Bieber as president of SCR, listed the debt as $280,000 and the security agreement as including "guaranty dated March 17, 1987."
 
 
 6
 In 1988, BLC paid off its December 1985 loan and requested that its March 1987 guaranty be returned. The bank refused, claiming the guaranty was security for the renegotiated SCR debt.
 
 
 7
 The Biebers allege several state claims and three incidents of illegal tying in violation of 12 U.S.C. Sec. 1972(1)(C) (1988). The district court granted the defendant's motion for partial summary judgment, dismissing the three federal tying claims and remanding the pendent claims to state court. The Biebers appeal the grant of summary judgment.
 
 
 8
 This court reviews de novo a grant of summary judgment. Tzung v. State Farm Fire and Casualty Co., 873 F.2d 1338, 1339-40 (9th Cir.1989). Summary judgment will be granted "against the party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1985).
 
 II
 
 9
 The Bank Holding Company Act provides:(1) A bank shall not in any manner extend credit, lease or sell property of any kind, or furnish any service, or fix or vary the consideration for any of the foregoing, on the condition or requirement--
 
 
 10
 . . . . .
 
 
 11
 (C) that the customer shall provide some additional credit, property, or service to such bank, other than those related to and usually provided in connection with a loan, discount, deposit or trust service;
 
 
 12
 12 U.S.C. Sec. 1972(1)(C) (1988).
 
 
 13
 The three allegedly illegal tying arrangements were: the use of the $100,000 December 1985 loan to BLC to reduce the debt carried by SCR; the later use of BLC's 1987 guaranty, originally issued to procure a FmHA loan guaranty, as additional security for a different SCR loan; and the bank's subsequent refusal to relinquish the BLC 1987 guaranty after BLC tendered full payment to the bank for its loan.
 
 
 14
 To state a viable claim under Sec. 1972, plaintiffs must show (1) "the banking practice in question was unusual in the banking industry," (2) "an anti-competitive tying arrangement" existed, and (3) "the practice benefits the bank." Rae v. Union Bank, 725 F.2d 478, 480 (9th Cir.1984). Failure to allege sufficient facts to establish any one of these elements is reason to grant summary judgment. At oral argument, plaintiffs' counsel conceded that there was nothing unusual about the December 1985 loan, leaving only their second and third claims for us to consider.
 
 
 15
 * The Biebers allege that it was an unusual banking practice and against the bank policy to require personal guaranties for a FmHA loan guaranty and later to use those guaranties to secure a different loan. They also allege that it was an unusual banking practice to tie continuance of the SCR loan to a personal guaranty from a separate customer, BLC.
 
 
 16
 While the March 1987 guaranties were given originally to obtain a FmHA loan guaranty for SCR, their subsequent use to secure SCR's renegotiated loan was authorized by Leroy Bieber, the signatory to the November 1987 agreement. We do not agree with the plaintiffs that the transactions were against bank policy. We also find nothing unusual about the bank wanting the additional security of personal guaranties from the shareholders and from another corporation when the loan was renegotiated. See Continental Ill. Nat'l. Bank & Trust Co. v. Windham, 668 F.Supp. 578, 585 (E.D.Tex.1987). Arguments about the enforceability of those personal guaranties are irrelevant in determining whether illegal tying occurred.
 
 B
 
 17
 The Biebers argue that anti-competitive tying occurred when the bank succeeded in tying up BLC's assets as security for SCR. They assert that BLC was compelled to assume another customer's debt and that continuance of the SCR loan was illegally tied to BLC's personal guaranty.
 
 
 18
 The record does not support the allegation that BLC was compelled to be involved and "forced to accept credit" from the bank. BLC was free to refuse to give the guaranty in March 1987 or to allow that guaranty to become part of the SCR renegotiated loan.
 
 
 19
 There is nothing anti-competitive about a bank requiring a debtor to "put its financial house in order." Tose v. First Pennsylvania Bank, 648 F.2d 879, 897-98 (3d Cir.), cert. denied, 454 U.S. 893, 102 S.Ct. 390, 70 L.Ed.2d 208 (1981). By enacting the tying provision to protect against the misuse of economic power, Congress did not intend to "interfere with the conduct of appropriate traditional banking practices." Sen.Rep. No. 1084, 91st Cong., 2nd Sess., reprinted in 1970 U.S.Code Cong. & Admin.News 5519, 5535. Nor did it intend to restrict a bank's creative efforts to protect its investments when no anti-competitive conduct is involved. See id. at 5536. Banks are not prohibited from renegotiating a debt. If a bank's terms are too onerous, it is for the debtor to renegotiate or to look elsewhere to refinance. See Federal Deposit Ins. Corp. v. Linn, 671 F.Supp. 547, 562 (N.D.Ill.1987).
 
 
 20
 The Biebers' argument turns the concept of tying on its head. The bank did not condition its extension of credit to BLC on BLC's agreement to guaranty SCR's loans, thereby tying credit to some additional but unrelated obligation. See Nordic Bank PLC v. Trend Group, Ltd., 619 F.Supp. 542, 557 (S.D.N.Y.1985). The bank was extending credit to and requiring additional security for SCR. BLC voluntarily provided that security. We find no anti-competitive tying here.
 
 C
 
 21
 To the extent that the Biebers are suing individual defendants for illegal tying under Sec. 1972, those claims must be dismissed. Section 1972 does not apply to natural persons. Rae v. Union Bank, 725 F.2d 478, 480 (9th Cir.1984).
 
 
 22
 AFFIRMED.