**ALPINE ELECTRIC COMPANY, et al., Plaintiffs,**

v.

**UNION BANK, Defendant.**

**No. 90–0370–CV–W–8.**

United States District Court, W.D. Missouri, W.D.

Oct. 30, 1991.

---

Steven C. Block & Ronald R. Holliger, Boland, McQuain, Block, DeHardt & Rosenbloom, Kansas City, Mo., for plaintiffs.

Robert R. Raymond, Todd A. Johnson, Shughart, Thomson & Kilroy, P.C., Kansas City, Mo., for defendant.

## ORDER

STEVENS, District Judge.

### I. Introduction

Plaintiffs Alpine Electric Company ("Alpine"), Raymond Salva and Linda Shelton claim, under the Bank Holding Company Act ("BHCA"), that defendant acted improperly in its handling of a $60,000 loan to Alpine, a $400,000 loan to Alpha Electric Company ("Alpha"), and a $600,000 loan application from Alpine. The case is now before the court on defendant's motion for summary judgment.

Defendant argues that its actions under Count I of the complaint did not violate the anti-tying provisions of the BHCA, 12 U.S.C. § 1972(1)(C). It also argues that if Count I is dismissed, the remaining counts must be dismissed for lack of subject matter jurisdiction since they raise common law claims based only on pendent jurisdiction. Plaintiffs argue in response that there are material issues of fact which preclude summary judgment. For the reasons stated herein, defendant's motion for summary judgment is granted.

## II. Factual Summary

Plaintiffs Salva and Shelton formed Alpha Electric Company, an electrical contracting firm, in April, 1985. They were the officers and sole shareholders of Alpha, a union employer.

In an effort to contract for non-union jobs, plaintiffs formed Alpine Electric Company in June, 1987. Salva transferred all of his stock in Alpha to Shelton, and all of the stock in Alpine was issued to Salva. Salva was thus the sole shareholder in Alpine and later became the sole director and officer of Alpine. At the time of Alpine's incorporation, Shelton was given an option to become a 40 percent shareholder in Alpine.

Both Alpha and Alpine used defendant Union Bank to finance their electrical contracts. Alpha's last loan from defendant was a $400,000 line of credit obtained in June, 1988, and was used to finance a contract with Pool & Canfield, Inc. for the renovation of Central Middle School. The loan was secured by a pledge of Alpha's contract rights and by the personal guarantees of both Salva and Shelton. The loan agreement provided that a percentage of the contract proceeds would be applied to the loan balance.

In January, 1989, Alpine obtained a $60,000 line of credit from defendant to finance a project known as "Kids-R-Us." The loan was secured by a pledge of the contract rights and proceeds to defendant, and by the guarantees of Salva, Shelton and Alpha. In addition, a cross-collateralization/cross-default agreement was entered at that time between Union and Alpine. The agreement provided that the collateral pledged to secure Alpine's loan would also secure Alpha's loan, and vice versa; and it provided that a default by either Alpha or Alpine would cause a default by the other.

Alpha's loan became due on June 8, 1989 and was declared by defendant on July 14, 1989 to be in default. Alpine's loan likewise went into default at that time as a result of the cross-default agreement. A series of meetings then took place between Salva, Shelton and representatives of defendant, during which arrangements for repayment of the loans were discussed. At this same time, Salva and Shelton tried unsuccessfully to obtain alternative financing from several other sources.

On August 14, 1989, defendant agreed to extend the maturity of both loans. The Alpha loan was extended and secured by Alpine's pledge of a contract known as the Lenexa Elementary School project. The Alpine loan was extended in exchange for Alpine's agreement to assume liability on the Alpha loan. Alpha effectively had gone out of business by the time of these agreements.

On February 16, 1990, the general contractor of the Lenexa Elementary School project filed an involuntary petition in bankruptcy against Alpine. Alpine alleges that the August 14, 1989 arrangement caused a severe financial strain on Alpine and resulted in its inability to meet working capital requirements. Plaintiffs claim in Count I of the complaint that the August 14 arrangement violated the anti-tying provisions of the BHCA and thus they seek actual and treble damages.

## III. Standard for Summary Judgment

In reviewing defendant's motion for summary judgment, the court must consider whether "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In making this determination, the court notes that summary judgment is "properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986) (quoting Fed.R.Civ.P. 1).

There is no genuine issue for trial unless the nonmoving party establishes, through the record presented to the court, that it is able to prove evidence sufficient

for a jury to return a verdict in its favor. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986). If the evidence with which the nonmoving party proposes to prove his cause of action is "merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249–50, 106 S.Ct. at 2511 (citations omitted). Any inferences to be drawn from the facts, however, must be viewed in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

The material facts of the present case, as recited by the court on pages two and three herein, are not in dispute. The record which is before the court establishes these facts through extensive pleadings and supporting exhibits filed by both plaintiffs and defendant, including copies of deposition transcripts, affidavits, correspondence, and various agreements executed between the parties.

■ Plaintiffs argue somewhat summarily that there are factual issues which make this case inappropriate for summary judgment. The court disagrees. Once the moving party has carried its burden under Rule 56(c), and the court believes that defendant in the present case has done so, the nonmoving party must do more than "rest upon the mere allegations or denials" in its pleadings, Fed.R.Civ.P. 56(e), or "simply show that there is some metaphysical doubt as to the material facts." *Matsushita,* 475 U.S. at 586, 106 S.Ct. at 1356. Rather, the nonmoving party must "come forward with 'specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting Fed.R.Civ.P. 56(e)). *See also Anderson,* 477 U.S. at 247–48, 106 S.Ct. at 2509–10 ("[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be a genuine issue of material fact.").

Plaintiffs have failed to establish their ability to prove evidence sufficient for a jury to return a verdict in their favor, and

the court thus finds that there is no genuine issue of material fact for trial. Accordingly, the case is properly resolved with summary judgment.

## IV. Legal Analysis

■ Sec. 106(b) of the BHCA provides as follows:

(1) A bank shall not in any manner extend credit, lease or sell property of any kind, or furnish any service, or fix or vary the consideration for any of the foregoing, on the condition or requirement—

. . . . .

(C) that the customer provide some additional credit, property or service to such bank, other than those related to and usually provided in connection with a loan, discount, deposit, or trust service.

12 U.S.C. § 1972(1)(C) (1988). The purpose of the BHCA is to prohibit anticompetitive banking practices and thus guard against the abuse of economic power by banks. 1970 U.S.Code Cong. and Admin.News 5519, 5535. The BHCA was not intended, however, to interfere with "traditional banking practices" through which banks secure their loan portfolios. *Id.*

■ To prove a violation of the BHCA, a party must show (1) that the banking practice at issue is unusual in the banking industry, (2) that the practice resulted in an anti-competitive tying arrangement, and (3) that the practice benefited the bank. *Sanders v. First National Bank & Trust Co. in Great Bend,* 936 F.2d 273, 278 (6th Cir.1991); *Bieber v. State Bank of Terry,* 928 F.2d 328, 330 (9th Cir.1991); *Davis v. First National Bank of Westville,* 868 F.2d 206, 208 (7th Cir.), *cert. denied,* 493 U.S. 816, 110 S.Ct. 68, 107 L.Ed.2d 35 (1989); *Parsons Steel, Inc. v. First Alabama Bank of Montgomery,* 679 F.2d 242, 245 (11th Cir.1982). A party's failure to establish its ability to prove "any one of these elements is reason to grant summary judgment." *Bieber,* 928 F.2d at 330.

■ Plaintiffs therefore must first establish their ability to prove that the financing and security arrangement at issue

is unusual in the banking industry. Defendant required Alpine to provide additional collateral as part of the August 14, 1989 renegotiation of its loan. This in itself is not unusual and, in fact, it is perfectly permissible for a bank to "require substituted or additional collateral in connection with a customer's loans without violating § 1972." *Palermo v. First National Bank and Trust Co. of Oklahoma City*, 894 F.2d 363, 369 (10th Cir.1990). *See also Sanders*, 936 F.2d at 278 (Bank's condition for renegotiation that a "customer provide additional collateral in exchange for forbearance on collection of a defaulted note does not violate the bank [sic] Holding Company Act. Such a requirement is within the bounds of ordinary, customary, and traditional banking practices.").

Part of the additional collateral provided by Alpine was a guarantee of Alpha's loan balance with defendant. This is also not unusual as banks are permitted to consider a customer's complete financial picture, including the loans of related companies, in conducting loan transactions. *See Bieber*, 928 F.2d at 330 (court found "nothing unusual" about bank requiring personal guarantees from shareholders of debtor and from corporation related to debtor, as additional security in renegotiation of debtor's loan); *Palermo*, 894 F.2d at 369 ("Sound credit practices include evaluating affiliated debt prior to extending additional credit."); *Federal Deposit Ins. Corp. v. Linn*, 671 F.Supp. 547, 561, 562 (N.D.Ill. 1987); *Dannhausen v. First National Bank of Sturgeon Bay*, 538 F.Supp. 551 (E.D.Wis.1982) (bank required partners of the debtor personally to guarantee financing to debtor and to related company).

The Tenth Circuit addressed this issue in *Palermo*, 894 F.2d at 363, a case very similar to the one at hand. There the defendant bank required both Palermo, who was a partial owner of the debtor, and a related business, Three Sisters Investments, Ltd., to guarantee the debtor's renegotiated loan as a condition for renewal of Palermo's own credit with the bank. *Palermo*, 894 F.2d at 365–66. Upon the debtor's subsequent default, Palermo and Three Sisters sued, alleging violation of the anti-tying provisions of the BHCA.

Palermo was an officer, director and owner of a one-third interest in the debtor. *Id.* at 370. Palermo did not own an interest in Three Sisters, but his wife and three daughters owned 55% of the family-owned company, and he was a director and employee of the business. *Id.* The court found that the bank did not violate the BHCA in requiring Palermo and Three Sisters to guarantee the loan to the debtor, stating that:

[t]he bank in this case did no more than evaluate its entire existing relationship with the plaintiff when it conditioned renewal of Palermo's credit upon obtaining a guarantee of the [debtor's] indebtedness. We emphasize what this case is not about—a bank requiring one customer to guarantee the debt of another *unrelated* or *incidentally related customer*.

*Id.* (emphasis in original).

Plaintiffs contend in the present case that Alpha and Alpine were separate corporations and separate bank customers of defendant and therefore were unrelated entities. *See* Plaintiffs' Reply Brief, p. 8. The court finds this argument entirely unpersuasive given the extensive factual record which underscores the close relationship between these two companies.

Both companies were started and operated by the same two individuals, Raymond Salva and Linda Shelton. In fact, both companies were involved in identical work, electrical contracting, and Alpine actually evolved out of Alpha's inability to contract for non-union jobs. Before Alpine came into being, Salva and Shelton were the sole shareholders and officers of Alpha. When Alpine was created Salva transferred his interest in Alpha to Shelton, became the sole shareholder of Alpine, and Shelton received an option to acquire a 40% interest in Alpine.

The financing of Alpha and Alpine were also closely related. Salva and Shelton both personally guaranteed the $400,000 loan to Alpha for the Central Middle School project, and the $60,000 loan to Alpine for

the Kids–R–Us project. More noteworthy, however, is the fact that Alpha also guaranteed this same loan from defendant to Alpine. Finally, Alpine entered the cross-collateralization agreement with defendant, which stated in part that the collateral used to secure Alpine's loan would also secure Alpha's loan, and vice versa. The manifest weight of these facts clearly indicates that Alpha and Alpine were closely related entities. The court accordingly finds that the financing arrangement at issue did not constitute an unusual banking practice.

Plaintiffs attempt to distinguish the present case from the host of cases which found similar transactions were permissible under the BHCA, by stressing the fact that Alpine was in default of its own financing from defendant at the time that it agreed to assume the defaulted Alpha debt. Plaintiffs thus argue that the transaction at issue amounted to an anticompetitive practice.

Salva and Shelton both testified in their depositions, however, that defendant's main concern was getting the loans paid off, and defendant did not care if plaintiffs went to other banks to accomplish that. *See* Defendant's Brief in Support of Motion for Summary Judgment, Exhibit 9, p. 415, and Exhibit 10, p. 218. In fact, Salva and Shelton tried several times without success to obtain alternative financing before agreeing to the financing arrangement at issue. This certainly undercuts the argument that defendant engaged in an anticompetitive banking practice.

*Palermo* again presents a factually similar case. Like plaintiffs in the present case, Palermo was seeking to renew his own financing with the defendant bank at the time that he agreed to guarantee the defaulted debt of his business. *Palermo*, 894 F.2d at 366. He too sought to obtain financing from alternative sources. Finally, unable to secure financing elsewhere, Palermo grudgingly "complied with the bank's demand, signing his name to the guarantee on the back of the [debtor's] note, 'under protest.'" *Id.* at 366. The court nonetheless found that the arrangement did not constitute an uncompetitive

practice, stating that "the bank did not force Palermo to renew his performing loan and cannot be said to be exploiting its economic position when it became his lender of last resort." *Id.* at 369. Likewise, defendant Union Bank cannot be said to have engaged in an anticompetitive practice when it permitted plaintiffs to pursue other financing alternatives and extended their loan only when they turned to defendant as their "lender of last resort."

Having determined that the financing arrangement at issue was neither unusual in the banking industry nor constituted an anticompetitive practice, the court thus finds that Count I of plaintiffs' complaint fails to support a claim for violation of § 1972 of 12 U.S.C., and that count is therefore dismissed. Plaintiffs remaining pendent state law claims are accordingly dismissed for lack of subject matter jurisdiction. Therefore, the court hereby

ORDERS that defendant's motion for summary judgment is granted. Judgment is entered in favor of defendant Union Bank and against plaintiffs Alpine Electric Company, Raymond Salva, and Linda Shelton.