**ALPINE ELECTRIC COMPANY, a Missouri corporation; Raymond Salva; Linda Shelton, Appellants,**

v.

**UNION BANK, a State Banking Company, Appellee.**

No. 92–1052.

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 18, 1992.

Decided Nov. 6, 1992.

---

5. *See* Aff. of Jerome Weiler, Nov. 11, 1991.

Ronald R. Holliger and Stephen M. Ryan, Kansas City, Mo., argued, for appellants.

Robert R. Raymond and William W. Quirk, Kansas City, Mo., argued, for appellee.

Before JOHN R. GIBSON, BOWMAN and MORRIS SHEPPARD ARNOLD, Circuit Judges.

JOHN R. GIBSON, Circuit Judge.

Alpine Electric Company appeals from an order of the district court granting summary judgment in favor of Union Bank on Alpine's claim that Union violated the anti-tying provisions of the Bank Holding Company Act Amendments of 1970, 12 U.S.C.A. 1972(1)(C) (West 1989). On appeal, Alpine argues that the district court[1] erred in finding that Union did not violate the anti-tying provisions of the Act by using money from Alpine's checking account to reduce the debt of a related corporation, Alpha Electric Company, and by conditioning the renewal of Alpine's loan on its agreement to assume a loan of Alpha. We affirm the judgment.

The district court detailed the facts of this case, and we need not repeat them here. *Alpine Electric Co. v. Union Bank,* 776 F.Supp. 486, 488 (W.D.Mo.1991). Suffice it to say, Alpine claims that the bank violated the anti-tying provisions of the Bank Holding Company Act by using money from Alpine's checking account to reduce Alpha's loan balance, and by conditioning the reinstatement of Alpine's loan on its agreement to assume the remaining Alpha debt and provide additional collateral for that debt.

The relationship between Alpine and Alpha is key to the discussion of Alpine's claims. The district court in its order granting summary judgment outlines the facts:

> [Alpine and Alpha] were started and operated by the same two individuals, Raymond Salva and Linda Shelton. In fact, both companies were involved in identical work, electrical contracting, and Alpine actually evolved out of Alpha's inability to contract for non-union jobs. Before Alpine came into being, Salva and Shelton were the sole shareholders and officers of Alpha. When Alpine was cre-

---

1. The Honorable Joseph E. Stevens, Jr., United States District Judge for the Western District of Missouri.

ated Salva transferred his interest in Alpha to Shelton, became the sole shareholder of Alpine, and Shelton received an option to acquire a 40% interest in Alpine.

The financing of Alpha and Alpine were also closely related. Salva and Shelton both personally guaranteed the $400,000 loan to Alpha for the Central Middle School project, and the $60,000 loan to Alpine for the Kids–R–Us project. More noteworthy, however, is the fact that Alpha also guaranteed this same loan from defendant to Alpine. Finally, Alpine entered the cross-collateralization agreement with defendant, which stated in part that the collateral used to secure Alpine's loan would also secure Alpha's loan, and vice versa. The manifest weight of these facts clearly indicates that Alpha and Alpine were closely related entities.

*Id.* at 490–91.

■ The Bank Holding Company Act provides:

> (1) A bank shall not in any manner extend credit, lease or sell property of any kind, or furnish any service, or fix or vary the consideration for any of the foregoing, or the condition or requirement—
>
> .    .    .    .    ..
>
> (C) that the customer shall provide some additional credit, property, or service to such bank, other than those related to and usually provided in connection with a loan....

12 U.S.C. § 1972(1)(C). A violation of the anti-tying provisions of the Act requires a showing that the banking practice at issue: was unusual in the banking industry; resulted in an anti-competitive tying arrangement; and benefited the bank. *Bieber v. State Bank of Terry,* 928 F.2d 328, 330 (9th Cir.1991).

■ The district court dismissed Alpine's claim that the bank violated section 1972, concluding that the bank's actions did not constitute unusual or anti-competitive prac-

tices.[2] *Alpine Electric Co.,* 776 F.Supp. at 491. The court rejected Alpine's contention that Alpha and Alpine were separate corporations and separate bank customers and, therefore, unrelated. *Id.* at 490–91.

On appeal, Alpine argues that the district court erred in concluding that the bank's handling of the loans was not unusual in the banking industry or amounted to an anti-competitive practice. Alpine argues that the bank's failure to recognize the separate interests of. the two corporations emphasizes the unusual nature of the bank's transactions.

The bank is entitled to summary judgment if there is no genuine issue as to any material fact. Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). In reviewing the district court's order granting summary judgment, we view the evidence and the reasonable inferences from the evidence in the light most favorable to Alpine. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587–88, 106 S.Ct. 1348, 1356–57, 89 L.Ed.2d 538 (1986).

The Tenth Circuit considered conduct similar to the bank's here in *Palermo v. First National Bank & Trust Company,* 894 F.2d 363 (10th Cir.1990). The plaintiff in that case owned part of the debtor corporation and was an officer and employee of a family corporation in which his wife and three sisters owned a majority interest. *Id.* at 370. The family corporation defaulted on one of its loans, and the bank agreed to renew plaintiff's personal loan only if plaintiff guaranteed the corporation's loan. *Id.* at 366. After unsuccessfully. attempting to get other financing, plaintiff guaranteed the corporation's debt. *Id.* Plaintiff claimed that the bank violated the anti-tying provisions of the Act by conditioning the renewal of his loan on assuming the loan of the corporation. The Tenth Circuit rejected this argument, reasoning:

> The bank ... did no more than evaluate its entire existing relationship with the plaintiffs when it conditioned renewal of

2. The district court also dismissed the remaining pendent state law claims for lack of subject matter jurisdiction. *Alpine Electric Co. v. Union Bank,* 776 F.Supp. 486, 491 (W.D.Mo.1991).

[plaintiff's] credit upon obtaining a guarantee of the [corporation's] indebtedness. We emphasize what this case is *not* about—a bank requiring one customer to guarantee the debt of another *unrelated* or *incidentally related customer.*

*Id.* at 370.

The Ninth Circuit reached the same result in *Bieber,* 928 F.2d at 331. In that case, the court concluded that it was not unusual for a bank to require personal guaranties from shareholders of the debtor corporation and from a corporation related to the debtor corporation as additional security in renegotiating a loan. *Id.* at 330.

Alpine says that *Bieber* and *Palermo* are distinguishable because Alpine was forced to obtain credit and assume Alpha's loan only after the bank applied its checking account proceeds to Alpha's loan. Alpine says that the bank's use of money from Alpine's checking account to pay down Alpha's loan was unusual in the banking industry and was an anti-competitive practice because the set-off forced Alpine to "participate" in the bank's loan to Alpha.

At oral argument, Alpine also pointed to the affidavit of its expert stating that the bank engaged in unusual banking practices in handling the Alpha and Alpine loans. William R. Mills, an associate of a professional bank management and consulting firm, opined that it was not a usual and customary banking practice for a bank to require one corporation to assume and guarantee the debt of another corporation as a condition of making a loan or renegotiating an existing loan to the guarantor corporation. He further stated that it was not a usual and customary banking practice for a bank to require a borrower as a condition of receiving a loan to give a security interest in the borrower's property to secure the repayment of another borrower's obligation. Finally, he stated that it was not a usual and customary practice for a bank to setoff a customer's bank account and apply the proceeds to any debt or other obligation other than those of the customer whose account was offset, and that such a

practice would be anti-competitive with respect to bank services.

Alpine's arguments spring from its assumption that Alpine and Alpha and their principals should be treated separately. The facts we have set forth above, however, demonstrating the close relationship between Alpha, Alpine, and Shelton and Salva, the principals, require that we reject Alpine's contention that this case is distinguishable from *Palermo* and *Bieber.* Shelton stated that she was aware that the bank treated Alpine, Alpha, Salva and her as one borrower and that they co-signed for each other. There was evidence that Shelton and Salva routinely transferred funds between Alpha and Alpine without documentation or interest charges. In contrast, Mills treats the corporations and customers as separate and distinct entities. Mills' opinions are not based on the record showing the close relationship between Alpine, Alpha, and their principals. Alpine has failed to establish a genuine issue of fact that the bank's actions were unusual in the banking industry.[3]

Thus, Alpine has failed to establish facts showing that there is a genuine issue of fact or that the district court erred in its interpretation of the Act.

We affirm the entry of summary judgment.

---

**3.** Because we conclude that Alpine has failed to establish that the banking practices were unusu-

al, we need not determine whether the practices were anti-competitive.