OPINION
{¶ 1} This is an appeal from decisions of the Court of Common Pleas of Richland County which granted Appellee's Motion for Summary Judgment and denied that of Appellant.
 STATEMENT OF THE FACTS {¶ 2} The essential issues in this case involve the obtaining of GAP insurance coverage. Such insurance provides payment of the difference in the value of a motor vehicle upon the occurrence of an accident or other cause resulting in a total loss of such vehicle and the balance still owing to a lien holder thereon as the depreciation which occurs after acquisition often is greater than the debt reduction.
 {¶ 3} Appellee's business involves sales of GAP coverage to vehicle dealers.
 {¶ 4} Appellant, as a bank, of course, provides the funds to a prospective purchaser of a vehicle. If such buyer desires GAP insurance, Appellant, at a cost, enters into a contractual arrangement by note addendum to forgive the indebtedness remaining upon a total loss occurring and, insurance protection is obtained as to recovery of the debt forgiveness loss.
 {¶ 5} Both Appellee and Appellant obtained GAP coverage from the same carrier, Balboa Insurance Co.
 {¶ 6} Appellee asserted that Appellant required a borrower to procure GAP through it as a condition of obtaining a loan, and thereby stifled competition and violated Federal banking law and regulations.
 {¶ 7} Appellee denied both such violation and that a loan would not be granted to a prospective vehicle purchaser desiring GAP unless arranged through it.
 {¶ 8} The Court in its rulings agreed with the position of Appellee.
 {¶ 9} The sole Assignment of Error is:
 {¶ 10} "Based on the uncontradicted material facts before it, the trial court erred in denying defendant's motion for summary judgment and in granting plaintiff's motion for summary judgment."
 SUMMARY JUDGMENT STANDARD {¶ 11} Summary judgment proceedings present the appellate court with the unique opportunity of reviewing the evidence in the same manner as the trial court. Smiddy v. The Wedding Party,Inc. (1987), 30 Ohio St.3d 35, 36. Civ.R. 56(C) states, in pertinent part:
 {¶ 12} Summary Judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . A summary judgment shall not be rendered unless it appears from such evidence or stipulation and only therefrom, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, such party being entitled to have the evidence or stipulation construed most strongly in his favor.
 {¶ 13} Pursuant to the above rule, a trial court may not enter a summary judgment if it appears a material fact is genuinely disputed. The party moving for summary judgment bears the initial burden of informing the trial court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. The moving party may not make a conclusory assertion that the non-moving party has no evidence to prove its case. The moving party must specifically point to some evidence which demonstrates the non-moving party cannot support its claim. If the moving party satisfies this requirement, the burden shifts to the non-moving party to set forth specific facts demonstrating there is a genuine issue of material fact for trial. Vahila v. Hall
(1997), 77 Ohio St.3d 421, 429, citing Dresher v. Burt (1996),75 Ohio St.3d 280.
 {¶ 14} The essential issue from a legal standpoint is whether the practices of Appellant relative to GAP protection violate the Bank Holding Act Title 12, Section 1972.
 {¶ 15} The trial court concluded that such statute prohibited Appellant's activity and quoted such statute as follows:
 {¶ 16} "Title 12, Section 1972, is entitled: Certain tying arrangements prohibited, correspondent accounts.
 {¶ 17} "Section 1972(1) states that: `A bank shall not in any manner extend credit, lease or sell property of any kind, or furnish any service, or fix or vary the consideration for any of the foregoing, on the condition or requirement . . .
 {¶ 18} "(A) that the customer shall obtain some additional credit, property, or service from such bank other than a loan, discount, deposit, or trust service; . . .
 {¶ 19} "The last part of Section 1972 states: `The Board may by regulation or order permit such exceptions to the foregoing prohibition and the prohibitions of section 1843(f)(9) and 1843(h)(2) of this title as it considers will not be contrary to the purposes of this chapter'."
 {¶ 20} Several cases have construed the meaning and intent of Section 1972.
 {¶ 21} The United States Fifth Circuit Court of Appeals inDibidale of Louisiana, Inc. V. American Bank Trust Company,New Orleans (1990), 916 F.2d 300, stated:
 {¶ 22} Antitying provisions of the Bank Holding Company Act were intended to regulate conditional transactions and the extension of credit by banks more stringently than has the Supreme Court under general antitrust statutes. Bank Holding Company Act Amendments of 1970, Section 106(b), 12 U.S.C.A., Section 1972; Sherman Anti-Trust Act, Section 1 et seq., 15 U.S.C.A., Section 1 et seq.; Clayton Act, Sections 1, et seq., 3, 15 U.S.C.A., Sections 12 et seq., 14; Federal Trace Commission Act, Section 5, 15 U.S.C.A. Section 45.
 {¶ 23} In SN Equipment Company v. Casa Grande CottonFinance Co. (1995), 97 F.3d 337, the United States Ninth Circuit Court of Appeals, while finding the proof to be insufficient as to an unlawful tying arrangement, stated:
 {¶ 24} Bank Holding Company Act applies the general principles of the Sherman Antirust Act prohibiting anticompetitive tying arrangements specifically to the field of commercial banking. Bank Holding Company Act Amendments of 1970, Section 106[a] et seq., as amended, 12 U.S.C.A., Section 1971 et seq.; Sherman Act, Section 1, et seq., as amended, 15 U.S.C.A., Section 1 et seq.
 {¶ 25} Bank Holding Company Act prohibits bank from conditioning the extension of credit on the requirement that the customer obtain some additional credit, property, or service from the bank other than loan, discount, deposit, or trust service. Bank Holding Company Act Amendments of 1970, Section 106[b](1)(A), as amended, 12 U.S.C.A., Section 1972(1)(A).
 {¶ 26} "To establish violation of antitying provision of the Bank Holding Company Act, plaintiff must show that the banking practice in question was unusual in the banking industry, that an anticompetitive tying arrangement existed, and that the practice benefited the bank. Bank Holding Company Act Amendments of 1970, Section 106[b], as amended, 12 U.S.C.A., Section 1972."
 {¶ 27} See also, Sanders v. First National Bank TrustCompany in Great Bend (1991), 936 F.2d 273 and Alpine ElectricCompany v. Union Bank (1992), 979 F.2d 133, in which each Court also required the three elements of proof, to-wit: Anticompetitive tying arrangement, unusual banking practice, and benefit to the Bank.
 {¶ 28} In making its rulings on the respective Civil Rule 56 Motions, the court had before it the pleadings, affidavits, depositions and briefs.
 {¶ 29} In the first deposition of Jerry Simon, an employee of Appellant, the testimony is quite clear that a loan to a prospective borrower desiring GAP protection would not be granted unless arranged through Appellant by way of the debt cancellation addenda with such bank obtaining subsequent insurance to recover such loss.
 {¶ 30} The testimony conforms to his memorandum of August 21, 2001.
 {¶ 31} The transcript of the deposition of Jerry Simon on Friday, November 1, 2002, Page 37, Lines 11-17 reflects:
 {¶ 32} "Okay. Go back to Exhibit 1 with me for a minute then. Advantage for sale to our area auto dealers; effective September 3rd, 2001 the only GAP insurance approved for financing on our indirect loans and leases will be the policy purchased through First-Knox, you see that?"
 {¶ 33} "Yes."
 {¶ 34} Mr. Simon responds to the questions propounded on Pages 38-39 and Pages 42-43:
 {¶ 35} "Let's assume I'm a customer, I'm sitting at a dealership that has an Agency Agreement, I say I want GAP but I want somebody else's, they submit the loan to you, would your approve it?
 {¶ 36} "No.
 {¶ 37} "Okay. If another business offered a GAP product that was underwritten by Balboa, would you fund that through First-Knox?
 {¶ 38} "Not from our policy as of that September date.
 {¶ 39} "Why not?
 {¶ 40} "— that in order to get that purchase financed by First-Knox, that the GAP product must be the GAP Advantage described in Exhibit 1?
 {¶ 41} "Yes."
 {¶ 42} While it is true that the original deposition was not signed by Mr. Simon, but with the corrections admittedly prepared by legal counsel controverting this testimony, and the initial responses corresponding to the memorandum, it can be argued that reliance upon the memorandum rather than the substituted responses was appropriate.
 {¶ 43} Appellant, in its argument substantiates reliance upon the memorandum of August, 2001, when, in referencing Mr. Simon's first deposition, states on Page 8 of its brief:
 {¶ 44} "First Knox will contend in its argument that the documents speak for themselves and the misdescription of them by its own witness must be ignored by the court."
 {¶ 45} However, in the second deposition held on Friday, November 22, 2002, the same witness stated in response to the question on Page 15, Lines 23-24, and Page 16, Lines 1-2:
 {¶ 46} "If someone who was also selling a GAP waiver was doing one with Balboa, would you finance that?
 {¶ 47} "We would only finance ones on our loan documents that we would purchase through Balboa."
 {¶ 48} Therefore, we do not question the court's determination that the obtaining of a vehicle loan was tied to Appellant's GAP arrangement practice.
 {¶ 49} Also, there is no question that Appellant benefited from this practice. It charged a fee and assured itself of prompt claim processing.
 {¶ 50} The third branch of proof required to establish violation of the Bank Holding statute is whether the practice of Appellant was unusual in the banking industry.
 {¶ 51} Appellee states on page 6 of its brief that Appellant is the only bank known to have implemented such a policy. The Amicus Brief likewise on page 6, that the evidence is overwhelming that banks routinely offer debt cancellation and purchase insurance. Neither statement is supported. The deposition of Mr. Simon does touch on this issue but is based on supposition and maybes.
 {¶ 52} On Page 59 of the initial deposition, the following occurred:
 {¶ 53} "Okay. Now, in terms of your competitors for that kind of lending, are you aware of anyone else who has done something similar to what you have done in Exhibit 1?
 {¶ 54} "That are headquartered or do lending?
 {¶ 55} "Do any business in Knox County?
 {¶ 56} "To my understanding that Huntington does.
 {¶ 57} "Anybody else?
 {¶ 58} "I believe Fifth Third does.
 {¶ 59} "Anyone else?
 {¶ 60} "Ford Motor may, but I'm not a hundred percent sure.
 {¶ 61} "Okay. Any others?
 {¶ 62} "There may or may not. I don't know."
 {¶ 63} In examining Appellant's affidavits as to the Motion for Summary Judgment, we find that of Stephen L. Young does not address the legal issues involved.
 {¶ 64} While he did state that many lenders have taken the same position as Appellant, he also stated that the GAP he was familiar with was different than that of Appellant and Appellee.
 {¶ 65} That of Jerry Simon is remarkable in its explicitness as compared to his depositions but, again dealsprimarily with the benefit to Appellant as to the process it has established. It leaves open the question as to whether such practice is necessary since the same carrier, Balboa, is involved both for Appellant and Appellee. The Affidavit of Ms. Charles is merely hearsay as to a third-party telephone conversation.
 {¶ 66} There is no doubt that debt cancellation arrangements are appropriate under the Bank Holding Act and these, by themselves do not equate to insurance. First National Bank ofEastern Arkansas v. Ron Taylor, Commissioner (1990),907 F.2d 775.
 {¶ 67} There is some question, however, under the terms of the August 21, 2001, memorandum as to whom is buying the Balboa insurance as it says "purchased through First-Knox" rather than stating that Appellant will provide debt cancellation upon total loss at listed cost. If Appellant were merely protecting itself through GAP insurance, it would not necessarily have to be stated.
 {¶ 68} The entire memorandum can be interpreted to the effect that the vehicle buyer is purchasing the insurance coverage and can only obtain such through Appellant. This was the court's conclusion.
 {¶ 69} The concern, however, which we have is that the third requirement relating to the issue of whether this practice is common in the banking industry is a material fact which has not been established sufficiently to warrant the sustaining of Appellee's Motion for Summary Judgment.
 {¶ 70} We, therefore, sustain the Assignment of Error and reverse and remand this cause for further proceedings in accordance herewith.
Boggins, J., Wise. J., concur.
Hoffman, P.J., dissents