**John Dean AYON, Plaintiff,**

**v.**

**Reverend Marshall GOURLEY, Archdiocese of Denver, and Most Reverend Charles J. Chaput, His Predecessors and Successors, as Archbishop of the Roman Catholic Archdiocese of Denver, Defendants.**

Civ. A. No. 97–S–1936.

United States District Court, D. Colorado.

July 15, 1998.

Windle Turley, Dallas, TX, Juanita June Benetin, Juanita Benetin, PC, Denver, CO, Joyce Ann Seelen, Seelen & Associates, Denver, CO, for John Dean Ayon, plaintiff.

Gary B. Blum, Walter N. Houghtaling, Christina L. Lindsay, Long & Jaudon, Denver, CO, for Marshall Gourley, Reverend, defendant.

Charles Goldberg, James M. Lyons, Samuel Martin Ventola, Rothgerber, Johnson & Lyons, LLP, United States District Court, Denver, CO, for Roman Catholic Archdiocese of Denver, Charles J. Chaput, defendants.

## MEMORANDUM OPINION AND ORDER

SPARR, District Judge.

THIS MATTER came on for hearing on June 19, 1998 on Defendants Archdiocese of Denver's and Most Reverend Charles J. Chaput's Motion to Dismiss or for Summary Judgment, filed October 22, 1997, and Defendant Marshall Gourley's Motion for Summary Judgment, filed October 24, 1997. The Court has heard the arguments of counsel and has reviewed the motions, the response, the replies, and the applicable law. While the motions were directed to Plaintiff's original complaint, the Court and the parties spent time at the hearing clarifying the Motion for Leave to Amend the Complaint and claims that resulted from that amendment. Consequently, the

arguments on Defendants' motions were directed to the claims that are pending in the Amended Complaint.

Defendants Archdiocese of Denver and Most Reverend Charles J. Chaput (hereinafter "Archdiocese Defendants") move for dismissal or summary judgment on the claims against them in Plaintiff's Amended Complaint on the basis of the First Amendment to the United States Constitution and the statute of limitations. Defendant Gourley moves for summary judgment on the basis of the statute of limitations. Although it appears that the First Amendment issue could be dealt with under either the dismissal or summary judgment standard, the Court chooses to address it under the former. The statute of limitations issue, which must necessarily be considered under the summary judgment standard, will be addressed subsequently.

### Motion to Dismiss

"Dismissal pursuant to Fed.R.Civ.P. 12(b)(6) requires a legal determination that plaintiff can prove no set of facts in support of its claim that would entitle it to relief." *Cayman Exploration Corp. v. United Gas Pipe Line Co.*, 873 F.2d 1357, 1359 (10th Cir.1989). "[T]he complaint must allege facts sufficient, if they are proved, to allow the court to conclude that claimant has a legal right to relief." *Perington Wholesale, Inc. v. Burger King Corp.*, 631 F.2d 1369, 1373 (10th Cir.1979). A motion to dismiss for failure to state a claim upon which relief may be granted shall be decided on the sufficiency of the four corners of the complaint alone. Fed. R.Civ.P. 12(b).

#### First Amendment

The Archdiocese Defendants argue that both the Free Exercise clause and the Establishment clause of the First Amendment bar consideration of Plaintiff's claims against them. They argue that the former's prohibition on government interference with the free exercise of religion as well as the latter's prohibition of government's excessive entanglement with religion both require dismissal of all the claims against them. It is Defendants' contention that any consideration of claims which involve matters relating to a religious organization's management of its ministers would violate the right to church autonomy.

In opposition to Defendant's First Amendment argument, Plaintiff relies on *Employment Division, Department of Human Resources of Oregon v. Smith*, 494 U.S. 872, 110 S.Ct. 1595, 108 L.Ed.2d 876 (1990)[*Smith*] and its exception for 'neutral principles.' Plaintiff argues that that exception provides that while a party has a right to believe and profess whatever religious doctrine he or she chooses, there is no right to act in accordance with those beliefs if such actions would violate secular law. He contends that his claims are purely secular as they involve the general civil law against sexually abusing children. Plaintiff cites numerous Colorado state cases such as *Moses v. Diocese of Colorado*, 863 P.2d 310 (Colo.1993), *Destefano v. Grabrian*, 763 P.2d 275 (Colo.1988) and *DeBose v. Bear Valley Church of Christ*, 890 P.2d 214 (Colo.App.1994) in support of his argument that the First Amendment does not bar his claims.

As the Archdiocese Defendants have pointed out, caselaw from the state of Colorado on the First Amendment does not constrain this Court in any way. The fact that the Colorado state courts have taken an extremely expansive view of the claims allowed against religious organizations is not even particularly persuasive in light of the analysis by federal courts on this issue.[1]

Furthermore, while *Smith*'s neutral principles exception is valid, it is not very helpful under the facts as alleged in this case. Plaintiff's claims rely on general tort liability theories, which do not fit the

---

1. Likewise, the Court is not inclined to place any emphasis on any of the many other state court cases cited by the parties.

description of "valid and neutral law[s] of general applicability." *Smith*, 494 U.S. at 879, 110 S.Ct. 1595. The law at issue in *Smith* was a straightforward prohibition on the possession of certain specified controlled substances. Consequently, the law in that case does not translate well to a situation in which the Defendants are charged with outrageous conduct and negligent hiring and/or supervision.[2] Those claims, by definition, require much more subjective judgment on the appropriateness of the conduct than the across-the-board prohibition in *Smith*.

Consequently, the Court must focus its analysis on the claims against these Defendants and move directly to the issue of whether considering those claims would violate either the Free Exercise clause or the Establishment clause.

 "It is well-settled that when a court is required to interpret Canon Law or internal church policies and practices, the First Amendment is violated because such judicial inquiry would constitute excessive government entanglement with religion." *Isely v. Capuchin Province*, 880 F.Supp. 1138, 1150 (E.D.Mich.1995), citing *Serbian E. Orthodox Diocese v. Milivojevich*, 426 U.S. 696, 96 S.Ct. 2372, 49 L.Ed.2d 151 (1976) and numerous other cases. "The foregoing cases make clear that any inquiry into the decision of who should be permitted to become or remain a priest necessarily would involve prohibited excessive entanglement with religion." *Id.*

"[A]ny inquiry into the policies and practices of the Church Defendants in hiring or supervising their clergy raises the same kind of First Amendment problems discussed above, which might involve the Court in making sensitive judgments about the propriety of the Church Defendants' supervision in light of their religious beliefs." *Schmidt v. Bishop*, 779 F.Supp. 321, 332 (S.D.N.Y.1991). The Court has

also considered *Doe v. Hartz*, 970 F.Supp. 1375, 1431 (N.D.Iowa 1997) which found that "who may become or remain a priest must, almost inevitably involve an inquiry into church doctrine or policies, barring a negligent hiring or retention claim on First Amendment grounds." That court also held that it was premature to dismiss the negligent supervision claim prior to the summary judgment stage because the pleadings were inadequate to establish excessive entanglement.

In addition to the Colorado caselaw with which the Court has already dealt, Plaintiff relies on *Smith v. O'Connell*, 986 F.Supp. 73 (D.R.I.1997). That court held that it had jurisdiction over the negligent supervision claim as it could be decided based on neutral tort law principles of general application without the need to interpret religious doctrine. It also held that the Free Exercise Clause was not violated by the exercise of such jurisdiction.

The Court notes that the *Smith v. O'Connell* opinion dealt with motions to dismiss which were not directed at specific counts in the voluminous complaints. Consequently, the court dealt with what it perceived to be the plaintiffs "core claims." *Id.* at 75. With regard to the Free Exercise Clause, the Court found that the defendants had not established that religious doctrine would have prevented them from exercising reasonable care to preclude the sexual abuse of children. In dealing with the Establishment Clause, the court again reiterated that the motions were not directed at particular claims but found that it was "unlikely" that exercising jurisdiction over the case would cause excessive entanglement because no interpretation of religious doctrine appeared necessary. *Id.* at 81.

As the cases cited make clear, there are two issues with regard to the First

---

**2.** The Court notes that Defendant Gourley has not made an argument based on the First Amendment. Consequently, Plaintiff's argument that the First Amendment does not shield claims based on the neutral law providing for the protection of children against sexual abuse is more tenuous when applied to hiring/supervision claims than it would be claims against an individual who is actually accused of perpetrating the abuse.

Amendment. The first is whether allowing these claims to go forward would interfere with the Archdiocese Defendants' right to free exercise of their religion. The second is most commonly stated as whether these claims can be resolved without interpreting religious procedures or beliefs. Both issues are relevant to both the negligent hiring/supervision and outrageous conduct claims. It does appear though that the analysis of the outrageous conduct claim mirrors that of the negligent supervision claim.

The precise basis of Plaintiff's outrageous conduct claim against the Archdiocese Defendants is unclear from the Amended Complaint. The only statement that could possibly be construed as stating a basis for that claim, and the sentence cited by Plaintiff's counsel at the hearing, is the first sentence of paragraph 11 which states, "In 1986 or 1987, the Archdiocese was told that Father Gourley had sexually abused a boy." [3] While this may constitute a separate claim for purposes of the Amended Complaint, the analysis of this claim for First Amendment purposes would appear to be very similar to that for the negligent supervision claim. The difference, of course, is the intentional nature of the act. This difference does not change the fact that it is the Archdiocese Defendants' oversight roles with regard to Gourley that would have to be considered to determine if their conduct was inappropriate. Whether examined for negligence or intent, it is the Archdiocese Defendants' actions in supervising Gourley which would be at issue for both claims.

■ In applying these standards to the claims at issue, the Court finds that Plaintiff's negligent hiring claim would violate both the Free Exercise and Establishment Clauses. Like the majority of the cases cited, this Court finds that consideration of the hiring policies of the Archdiocese Defendants would inevitably require examination of church policy and doctrine. The

choice of individuals to serve as ministers is one of the most fundamental rights belonging to a religious institution. It is one the most important exercises of a church's freedom from government control. For this Court to insert itself into the process by which priests are chosen would substantially burden these Defendants' free exercise of a crucial power to control the future of the church and therefore constitute interference with the practice of their religion.

It would also cause excessive entanglement in church operations by fostering inappropriate government involvement. The application of even general tort law principles to church procedures on the choice of priests would require an inquiry into present practices with an intent to pass on their reasonableness. Such court examination and oversight of internal church policies would constitute an encroachment on the church's religious functions.

The Court finds that the result is the same for the negligent supervision and outrageous conduct claims. Defendants' arguments about how their relationships with their priests differ from that of a normal employer-employee relationship are illustrative of the problems inherent in such an inquiry. *See* Exhibit D to Archdiocese Defendants' motion. The supervision model used by the Archdiocese Defendants is based on this unique relationship conceived by church doctrine. Under these circumstances, the Court cannot agree with *Smith v. O'Connell* that consideration of such a claim would be unlikely to cause excessive entanglement. While Plaintiff attempts to characterize this as a normal supervision claim, the reality is that practices of disciplinary actions, reprimand write-ups and grievance procedures are improbable in a church setting. Instead, like the hiring claim, the procedures that the Archdiocese Defendants have in

---

**3.** Counsel also cited the second sentence of paragraph 11 which was subsequently stricken by the Court as inconsistent with previous factual statements. Consequently, the second sentence will not be considered as a basis for the outrageous conduct claim.

place regarding supervision would have to be examined to determine whether they were reasonable and adequate. This would clearly be inappropriate governmental involvement and a burden on these Defendants' exercise of religion. Consequently, Plaintiff's claims against the Archdiocese Defendants must be dismissed as violative of the First Amendment.

*Failure to State a Claim*

The Archdiocese Defendants have also moved for dismissal based on the more generic argument that Plaintiff has failed to state a claim upon which relief can be granted.

The Court begins by returning to the discussion of the basis for Plaintiff's outrageous conduct claim against the Archdiocese Defendants as stated in paragraph 11 of the Amended Complaint. Again that paragraph alleges that these Defendants failed to act after allegedly being notified in 1986 or 1987 that Gourley had sexually abused "a boy."

■ Since Plaintiff has alleged that the abuse began in 1981 and continued until 1984, it is unclear what effect a report to the Archdiocese in 1986 or 1987 could have had on the damage allegedly done to Plaintiff prior to that time. Consequently, it appears that, as an alternative grounds, the Outrageous Conduct claim should be dismissed for failure to state a claim. This is true because, even if all these allegations are true, they do not entitle Plaintiff to relief on this claim.

It was determined at the hearing on these motions that Plaintiff believed that his Amended Complaint stated a claim of which the Court and defense counsel were not aware. It is the Court's understanding that the claim can best be described as a vicarious liability claim against the Archdiocese Defendants for breach of fiduciary duty based on a theory of ratification. Although the existence of such a claim was unclear up to that point, the Archdiocese Defendants moved for its dismissal.

As a preliminary matter, the Court notes that although the terms "respondeat superior" and "ratification" are included in the Amended Complaint under the heading "Joint Liability Claims," neither respondeat superior nor ratification constitute a separate claim. Plaintiff's counsel stated that she agreed with the view that these were merely theories of liability but later changed her position when the Court questioned whether the Amended Complaint as proffered stated a claim for breach of fiduciary duty against the Archdiocese Defendants.

■ Whether a claim or a theory, Plaintiff has failed to adequately plead ratification. "[T]he person whose act is claimed to have been ratified must have been acting on behalf of the person benefitted. If the actor's actions are in his own behalf, the doctrine of ratification is inapplicable." *M.S.P. Industries, Inc. v. Diversified Mortgage Services, Inc.,* 777 P.2d 237, 238 (Colo.App.1989). The four corners of the amended complaint state that the Archdiocese Defendants ratified the action of Gourley which were outside the course and scope of his agency. Nevertheless the amended complaint fails to make any allegation that the actions alleged to have been taken were done with any intent to benefit the Archdiocese Defendants.

Additionally, "there can be no ratification of a purported agent's act unless the alleged principal has knowledge of all material facts relating to the transaction being ratified." *Id.* at 239. Plaintiff has also failed to make any allegation that the Archdiocese Defendants were aware of any actions taken toward him by Gourley. Without some allegation that these acts were done other than on Gourley's own behalf and that these Defendants knew that Plaintiff was being harmed by Gourley, Plaintiff has not stated a claim for ratification, or a valid theory of ratification. Nor can Plaintiff prove ratification as a theory to support vicarious liability of these Defendants for another claim, such as breach of fiduciary duty.

Plaintiff's counsel stated the theory on the claim of breach of fiduciary duty against the Archdiocese Defendants as one

of vicarious liability. Consequently it is assumed that Plaintiff seeks to hold those Defendants liable for Gourley's alleged breach of his fiduciary duty. Again, this claim cannot go forward under a theory of ratification. Plaintiff has failed to allege that there was a "voluntary election by [these Defendants] to adopt in some manner as [their] own an act which was purportedly done on [their] behalf by another person," much less plead any facts to support that. BLACK'S LAW DICTIONARY 1135 (5th ed.1979).

Since it appears from the organization of the Amended Complaint that Plaintiff is alleging that the Archdiocese Defendants are liable as the principal of their agent Gourley because they ratified his actions, this ruling that Plaintiff has insufficiently pled ratification would dispose of any basis for liability on breach of fiduciary duty under either ratification or respondeat superior. Consequently, Plaintiff's claim against the Archdiocese Defendants for breach of fiduciary duty is dismissed for failure to state a claim.

### Motions for Summary Judgment

#### Statute of Limitations

All Defendants have moved for summary judgment on the basis of the statute of limitations. Granting summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, admissions, or affidavits show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Redmon v. United States,* 934 F.2d 1151, 1155 (10th Cir.1991); *Devery Implement Company v. J.I. Case Company,* 944 F.2d 724, 726 (10th Cir.1991); *Ash Creek Mining Co. v. Lujan,* 934 F.2d 240, 242 (10th Cir. 1991); *Continental Casualty Co. v. P.D.C., Inc.,* 931 F.2d 1429, 1430 (10th Cir.1991).

Summary judgment may be granted if the court concludes that no "rational trier of fact" could find for the nonmoving party based on the showing made in the motion and response. *Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538

(1986). After the moving party has come forward with the motion showing no issue of fact for trial, the party resisting a summary judgment motion must "come forward with specific facts showing that there is a genuine issue for trial." *Id.* The finding of no factual issue must be based upon the record as a whole. *Id.*

It is the nonmoving party's burden to show that there are genuine issues of material fact to be determined. *Celotex Corp. v. Catrett,* 477 U.S. 317, 320, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The court must view the evidence and its reasonable inferences in the light most favorable to the party who opposes the motion for summary judgment. *Palermo v. First National Bank and Trust Co.,* 894 F.2d 363, 365 (10th Cir.1990). Evidence that is merely colorable or not significantly probative is inadequate to withstand a summary judgment motion. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Redmon,* 934 F.2d at 1155. Immaterial factual disputes will not defeat a motion for summary judgment. *Palermo,* 894 F.2d at 366; *Anderson,* 477 U.S. at 247–48, 106 S.Ct. 2505.

■ The arguments regarding the summary judgment issue have been clarified somewhat by oral argument on the motions. Plaintiff has conceded that the two year statute of limitations set forth in C.R.S. § 13–80–102 applies to the claims against the Archdiocese Defendants. Defendant Gourley appears to have conceded that the six year statute of limitations in C.R.S. § 13–80–103.7 would apply if it is found that Plaintiff's cause of action did not accrue until after that statute took effect in July 1993. It also appears that the parties have agreed that the real issue on the statute of limitations is when the cause of action accrued. If the cause of action accrued at the time of the alleged events at issue, the statute will have run on all of Plaintiff's claims. If the cause of action did not accrue until July 1997, when Plaintiff started treatment with his current treating psychologist, Dr. James Shenk,

the statute had not yet run when this action was filed in September 1997.

The statute that defines the accrual of causes of actions is C.R.S. § 13–80–108(1). It provides that "a cause of action for injury to person ... shall be considered to accrue on the date, both the injury and its cause are known or should have been known by the exercise of reasonable diligence." The parties' arguments on this issue are not complicated. Defendants argue that Plaintiff has made admissions which establish conclusively that he knew or should have known of the injury and its cause at the time of the alleged abuse. Plaintiff argues that there is a genuine issue of material fact on whether he understood the injury and its cause at the time of the alleged incidents or only after he started treatment with Dr. Shenk.

The parties agree that the case which is most informative on the issue of accrual of this type of cause of action is *Cassidy v. Smith,* 817 P.2d 555 (Colo.App.1991). That case involved sisters who brought an action against a former friend of the family for claims based on his alleged sexual abuse of the sisters. The defendant moved to dismiss based on the statute of limitations but the plaintiffs argued that "they were unaware of the wrongful nature of the acts, the resulting damage from the acts, and the causal relationship between the two." *Id.* at 557. While defendant argued that the causes accrued at the time the plaintiffs reached the age of 18, the plaintiffs contended that they did not discover the essential elements until at least 10 years later when they were confronted by their mother.

The court in *Cassidy* considered C.R.S. § 13–80–108 in light of the affidavits filed by the plaintiffs and at least one treating psychologist. Those affidavits revealed that "from the time the incidents began, there was a negative impact upon their emotional well-being which indicated psychological problems and guilt were being caused by this relationship." *Id.* One plaintiff admitted experiencing "pain and despair, alienation from her peers, parents and sisters" and leading a "divided and compartmentalized life." *Id.* Both knew that the activity was improper, inappropriate and illegal at the time it occurred and both admitted feeling bewilderment, shame, anger and/or confusion at the time of the activity. The court also remarked on the fact that both plaintiffs were college educated and had spent a significant period of time away from the defendant.

The court's conclusion was that there was no genuine issue of material fact regarding the timing of the plaintiffs' knowledge of the injury and its cause. "[W]e conclude, as a matter of law, that plaintiffs were aware of the wrongful nature of defendant's acts and that they had sufficient knowledge concerning the existence of resulting psychological harm that the statute of limitations began to run when they achieved their majority." *Id.* at 558.

Plaintiff's argument on this subject is basically that he repressed knowledge of the injury and its cause until he established a therapy relationship with Dr. Shenk. The affidavit of Dr. Shenk, attached to Plaintiff's response to Defendants' motions as Exhibit 2, states that there were several reasons for this repression. One was the threats made to Plaintiff by Gourley. Another was Gourley's status as a "high-profile community leader" and "spiritual authority." Dr. Shenk states that the repression caused Plaintiff to be unable to acknowledge and address the reality that he had been sexually abused and harmed by that abuse. Dr. Shenk further states that these circumstances led Plaintiff to blame himself rather than attribute blame to Gourley and that only psychological treatment in June or July of 1997 allowed him to acknowledge the connection between his psychological problems and the abuse by Gourley.

Defendants' argument on this subject is based on references to specific evidence which they contend meets the standard set forth in *Cassidy.* They argue that this evidence shows that Plaintiff did acknowledge the assaults and resulting harm prior

# 1254

to June or July 1997. This evidence includes:

1. A statement on page 4 of the original complaint which says that Plaintiff has been continually subject to coercion, duress, religious duress, mental infirmity, disability and unsound mind "from the dates of the abuse to the present, and largely because of his abuse." [4]

2. A statement in paragraph 13 of Plaintiff's affidavit that he "was embarrassed, humiliated, ashamed and fearful about what happened."

3. A statement in paragraph 12 of Plaintiff's affidavit that said Gourley threatened to kill Plaintiff and his mother if Plaintiff told anyone what happened.

4. A statement in the report of Plaintiff's treating psychologist, Dr. Shenk, dated August 4, 1997, that Plaintiff "had been" reluctant to pursue the issues regarding Gourley "because his grandmother likes the priest, as does his aunt." [5]

5. A statement on page 2 of the statement from Plaintiff's Press Release which stated that while he was "unable to acknowledge the sexual assault and abuse by Gourley as such," he was always "cognizant of [those] actions."

6. A statement on page 7 of the original complaint that Gourley's actions resulted in the infliction of emotional distress on Plaintiff "when he sexually abused him."

7. A statement on page 15 of the original complaint that Plaintiff has suffered mental anguish and severe psychological pain and suffering "in the past" due to Defendants' actions.

8. Plaintiff's attendance at and graduation from Harvard Law School in Massachusetts.

9. Plaintiff's employment as a Senior Tax Specialist for KPMG Peat Marwick, LLP.

10. Plaintiff's lawsuit against KPMG Peat Marwick, LLP and others for employment discrimination.

11. Plaintiff's personal filing for bankruptcy.

Many of the statements cited above contain admissions that Plaintiff has suffered from severe psychological injury for a period of many years. Consequently the issue of whether Plaintiff was aware of the injury itself is really a non-issue. Therefore, the pertinent question is whether Plaintiff was aware of the cause of his injury. To a large extent, it appears to be Plaintiff's position that, once the affidavit of a psychologist is injected into the case, there is automatically an issue of fact regarding timing.

*Cassidy* shows us that is not true. In fact, the Court finds that the evidence in this case is even stronger than that in *Cassidy*. It is obvious from the section entitled 'Statements to the Court' in the original complaint that Plaintiff was aware from the beginning of this case that the statute of limitations would be an issue and yet he has made the numerous admissions cited which indicate that he was aware of the injury and its cause even while the abuse was allegedly occurring.

Plaintiff's counsel attempted to argue that the death threats allegedly made by Gourley were somehow related to the repression of Plaintiff's knowledge of the abuse. Nevertheless, these allegations also serve to the support conclusion that Plaintiff was aware of both the injury and its cause. The Court finds that no rational trier of fact could find that Plaintiff could acknowledge death threats against himself and his mother and not be aware that Gourley had harmed him.

The Court finds it very important that Plaintiff does not argue that he ever repressed his memory that these events hap-

---

4. Although the Court's Order dated July 10, 1998 allowed Plaintiff to amend his complaint, that Order also stated that the factual statements in the original complaint would be considered judicial admissions.

5. This report is attached to Gourley's reply brief in support of his motion for summary judgment as Exhibit B.

pened but merely his knowledge that the events constituted abuse which harmed him. The idea that a person of Plaintiff's background and education could be aware of such events and his own troubled psychological state and not tie them together is inconceivable as a matter of law. While his counsel has argued that the dynamics of a process such as repression are different when it occurs in children who are victims of sexual abuse than it is with adults, Plaintiff, by his own admission, was nearly 20 years of age when the abuse ended. The Court finds that Plaintiff knew or should have known both the injury and its cause by the exercise of reasonable diligence prior to September 1991. Consequently, summary judgment must be granted for Defendants on all Plaintiff's claims based on the statute of limitations.

It is hereby ORDERED that Defendants Archdiocese of Denver and Most Reverend Charles J. Chaput's Motion to Dismiss or for Summary Judgment is Granted. Judgment shall enter for Defendants Archdiocese of Denver and Most Reverend Charles J. Chaput and against Plaintiff on the claims in Plaintiff's Amended Complaint.

It is further ORDERED that Defendant Marshall Gourley's Motion for Summary Judgment is Granted. Judgment shall enter for Defendant Marshall Gourley and against Plaintiff on the claims in Plaintiff's Amended Complaint.

Defendants shall be entitled to their costs upon submission of a bill of costs to the Clerk of the Court within ten days of the date of this Order.