54 P.3d 349

**Shirin RASHEDI, Plaintiff–Appellant,**

**v.**

**GENERAL BOARD OF CHURCH OF the NAZARENE, a foreign benevolent corporation; Arizona/Southern Nevada District Church of the Nazarene, an entity of unknown type, Defendants–Appellees.**

**No. 1 CA–CV 01–0550.**

Court of Appeals of Arizona, Division 1, Department B.

Sept. 19, 2002.

---

Sanders & Parks, P.C., By Rick N. Bryson, Shane D. Buntrock, Michele L. Forney, Phoenix, Attorneys for Plaintiff–Appellant.

Douglas & Cox, L.L.P., By Dean R. Cox, Daniel E. Fredenberg, Phoenix, Attorneys for Defendant–Appellee, General Board of Church of the Nazarene.

Law Office of Jerry Steele, By Jerry Steele, Phoenix, Attorney for Defendant–Appellee, Arizona/Southern Nevada District Church of the Nazarene.

## OPINION

NOYES, Judge.

¶ 1 Shirin Rashedi, who was allegedly defrauded and seduced by her pastor, appeals the trial court's dismissal of her complaint against the General Board of the Church of the Nazarene ("Board") and the Arizona/Southern Nevada District Church of the Nazarene ("District"). The trial court concluded that it lacked subject-matter jurisdic-

tion because the case against the Board and the District would involve inquiry into the ecclesiastical doctrine, law, and polity of the Church of the Nazarene, in violation of the doctrine of ecclesiastical abstention. We conclude that the claims in question can be resolved by application of neutral principles of civil law and, therefore, that the trial court does have subject-matter jurisdiction.

## I.

¶ 2 Rashedi's amended complaint alleged that the Board and District were guilty of negligent hiring, negligent supervision, negligent retention, negligence under a theory of *respondeat superior*, *intentional infliction of emotional distress*, securities fraud, constructive fraud, and racketeering. Named defendants also included the Crossroads Church of the Nazarene (the "Church"), pastor Edward Yousfi, church employee Joseph Youssefi, the senior pastor and president of the Church, the executive pastor of the Church, and several companies on whose behalf Edward Yousfi and Joseph Youssefi allegedly solicited investment funds from Rashedi. The Board and the District are the only defendants involved in this appeal.

¶ 3 Rashedi's complaint alleged that in 1996 the Church began to reach out to the Persian community of the East Valley of Maricopa County. To that end, the Board, the District, and the Church hired Edward Yousfi as a pastor. However, according to the ·complaint, at or about the time these defendants hired Yousfi, they had credible information that he had a history of stealing money from, improperly soliciting investments from, and engaging in sexual misconduct with church members in other states. The complaint alleged that, between July 16, 1998, and January 2000, Yousfi and his brother (Youssefi) defrauded Rashedi of at least $286,000, that Yousfi gave the Church thousands of dollars improperly obtained from church members, and that he promised the Church a multi-million dollar donation. The complaint also alleged that, when the Church was informed that Yousfi and Youssefi were soliciting money from Church members, the Church vouched for Yousfi and

conducted no investigation despite having knowledge of his reputation and history.

¶ 4 The complaint also alleged that Yousfi engaged in sexual relations with Rashedi by using his position as pastor and spiritual advisor to exert emotiónal and physical control over her in an attempt to defraud her of money.

¶ 5 In their answer, the Board and District denied that the court had subject-matter jurisdiction, denied having control over the business affairs of the Church, and denied hiring Yousfi. The Board and the District filed separate Motions to Dismiss.

¶ 6 The Board's motion argued that the doctrine of ecclesiastical abstention required dismissal of the lawsuit against the Board under Arizona Rules of Civil Procedure ("Rule") 12(b)(1) and (6). Citing the "Manual of the Church of the Nazarene" (the "Manual"), and attaching several pages of the Manual to its motion, the Board explained that the Church of the Nazarene is a hierarchical church composed of three independent authorities: the local churches, the district assemblies, and the General Assembly, over which presides the Board. The Board contended that the authority of the General Assembly, and therefore of the Board, was limited to making rules and regulations for departments related to the Church of the Nazarene, organizing the membership of the Church of the Nazarene into district assemblies, determining the qualifications of district assembly representatives and the boundaries of assembly districts, and defining the powers of the district assemblies. The Board maintained that it had no control over and no knowledge of the operations of local churches. The Board argued that, under the ecclesiastical abstention doctrine, civil courts must accept the provisions of the Manual and are precluded from inquiring further.

¶ 7 The District's motion to dismiss argued that the court lacked subject-matter jurisdiction under the First Amendment and the doctrine of ecclesiastical abstention. Also citing the Manual, the District stated that the Church was an independent entity that had the right to select and hire its own pastor, manage its own financial affairs, and

control its own local work. According to the District, local churches report their activities to the District annually, but the District does not hire or discharge local pastors or staff members or set their duties. The District alleged that its only contact with Yousfi was in granting him the status of licensed minister for the Church of the Nazarene, which authorized him to preach the Word, to administer sacraments, and to officiate at marriages.

¶ 8 The District asserted that it approved or disapproved of a local church's selection of pastor based on an ecclesiastical review. The senior pastor was required to report annually to the District; others on the staff of the local church reported to the senior pastor. The District would review the status of licensed ministers annually for renewal of the license. Otherwise, the District exercised oversight with respect to its ministers only upon complaint by a church member.

¶ 9 The District argued that, because its role was limited to licensing Yousfi, any inquiry into the District's involvement in the case would necessarily require a review of the ecclesiastical doctrine of the Church of the Nazarene regarding licensing ministers, a matter over which, it asserted, the courts have no jurisdiction.

¶ 10 Rashedi responded that her complaint did not involve ecclesiastical issues; it involved a determination whether the Board and the District breached a secular duty by hiring and licensing Yousfi despite knowledge of his prior victimization of parishioners. Rashedi also argued that the Manual was outside the pleadings, and she requested a continuance to conduct further discovery under Rule 56(f) if the court considered the Manual in reaching its decision. Rashedi argued that attempts to depose the Board and the District had been unsuccessful and that she expected that the depositions would demonstrate that both the Board and the District had in fact been involved in hiring Yousfi.

¶ 11 The court ruled that the Manual set out the duties of the Church, the District, and the Board, and that any review of the District's and the Board's role in the case "would necessarily require a review of the ecclesiastical doctrine, law and polity of the Church of the Nazarene as it relates to granting licenses to ministers." The court concluded that such an inquiry was precluded by the First Amendment of the United States Constitution and the doctrine of ecclesiastical abstention. The court granted the Board's and the District's motions to dismiss, and it denied Rashedi's Rule 56(f) motion, finding that the requested discovery would not "defeat the basis of the Court's granting dismissal."

¶ 12 Over objection of Rashedi, the court included Rule 54(b) language in its dismissal order. Rashedi timely appealed. We have jurisdiction pursuant to Arizona Revised Statutes section 12–2101(B) (1994).

## II.

¶ 13 A court's decision that it lacks jurisdiction to adjudicate a claim is a question of law that we review *de novo*. *Hughes v. Creighton*, 165 Ariz. 265, 267, 798 P.2d 403, 405 (App.1990).

¶ 14 The First Amendment and the ecclesiastical abstention doctrine preclude civil courts from inquiring into ecclesiastical matters. For example, courts may not consider employment disputes between a religious organization and its clergy because such matters necessarily involve questions of internal church discipline, faith, and organization that are governed by ecclesiastical rule, custom, and law. *Gonzalez v. Roman Catholic Archbishop of Manila*, 280 U.S. 1, 16, 50 S.Ct. 5, 74 L.Ed. 131 (1929); *Dobrota v. Free Serbian Orthodox Church St. Nicholas*, 191 Ariz. 120, 124, ¶ 14, 952 P.2d 1190, 1194 (App.1998) (citing *Lewis v. Seventh Day Adventists Lake Region Conf.*, 978 F.2d 940, 942 (6th Cir.1992)); *Higgins v. Maher*, 210 Cal.App.3d 1168, 258 Cal.Rptr. 757, 759–60 (App.1989). Whether an individual is qualified to be a clergy member of a particular faith is a matter to be determined by the procedures and dictates of that particular faith. *Gonzalez*, 280 U.S. at 16, 50 S.Ct. 5; *Rayburn v. Gen. Conf. of Seventh–Day Adventists*, 772 F.2d 1164, 1169 (4th Cir.1985). Nor can civil courts inquire into internal organizational disputes between different fac-

tions of a religious organization or into property disputes that would require interpreting religious doctrine or practice. *Serbian E. Orthodox Diocese v. Milivojevich,* 426 U.S. 696, 709, 96 S.Ct. 2372, 49 L.Ed.2d 151 (1976); *Crowder v. S. Baptist Convention,* 828 F.2d 718, 726 (11th Cir.1987).

■ ¶ 15 Civil courts must accept "the decisions of the highest judicatories of a religious organization of hierarchical polity on matters of discipline, faith, internal organization, or ecclesiastical rule, custom, or law." *Milivojevich,* 426 U.S. at 713, 96 S.Ct. 2372. However, when a church-related dispute can be resolved by applying neutral principles of law without inquiry into religious doctrine and without resolving a religious controversy, the civil courts may adjudicate the dispute. *Jones v. Wolf,* 443 U.S. 595, 602–04, 99 S.Ct. 3020, 61 L.Ed.2d 775 (1979); *Barnes v. Outlaw,* 188 Ariz. 401, 404, 937 P.2d 323, 326 (App.1996), *vacated in part on other grounds,* 192 Ariz. 283, 964 P.2d 484 (1998).

■ ¶ 16 Because religious organizations are part of the civil community, they are subject to societal rules governing property rights, torts, and criminal conduct. *Dobrota,* 191 Ariz. at 125, ¶ 22, 952 P.2d at 1195. The First Amendment does not excuse individuals or religious groups from complying with valid neutral laws. *Employment Div., Dep't of Human Res. v. Smith,* 494 U.S. 872, 878–79, 110 S.Ct. 1595, 108 L.Ed.2d 876 (1990).

■ ¶ 17 The question in the present case is whether the civil court can adjudicate claims against certain officials of a religious organization based on their alleged licensing and hiring of a pastor whom they knew or had reason to know was likely to victimize members of that organization. Courts addressing this kind of issue have reached various conclusions.

¶ 18 In *Ayon v. Gourley,* the plaintiff alleged sexual abuse by a priest and sued the priest and the archdiocese on claims that included negligent hiring and supervision.

47 F.Supp.2d 1246, 1250 (D.Colo.1998). The court reasoned that the tort claims raised by the plaintiff required much more subjective judgment on the appropriateness of the conduct than the neutral law found applicable in *Employment Division v. Smith,* which concerned a statutory criminal prohibition. *Ayon,* 47 F.Supp.2d at 1248–49. The court concluded that any consideration of the hiring and supervision policies of the archdiocese would necessarily require examination of church policy and doctrine, as well as a determination whether those policies were reasonable and adequate. *Id.* at 1250–51. The court held that the First Amendment precluded this examination. *Id.* at 1251.

¶ 19 Church defendants obtained similar immunity for negligence-based claims in *Isely v. Capuchin Province,* 880 F.Supp. 1138, 1150–51 (E.D.Mich.1995), *Gibson v. Brewer,* 952 S.W.2d 239, 246–49 (Mo.1997), and *Pritzlaff v. Archdiocese of Milwaukee,* 194 Wis.2d 302, 533 N.W.2d 780, 790–91 (1995).[1] In *Gibson,* the court expressed concern that imposing tort standards of reasonableness on religious organizations would necessarily require evaluating "the reasonableness of religious beliefs, discipline, and government." *Gibson,* 952 S.W.2d at 247–50.

¶ 20 However, other courts have decided that claims involving negligent hiring, supervision, and retention can be addressed without inquiring into ecclesiastical matters. In *Smith v. O'Connell,* plaintiffs sued Catholic priests and various officials of the diocese, alleging that the priests had sexually assaulted them. 986 F.Supp. 73, 75 (D.R.I.1997). Diocesan officials moved to dismiss based on the First Amendment. *Id.* The court noted that the case before it was not a dispute between factions within a church, or between a church and its clergy, or involving an internal church matter. *Id.* Rather, the dispute concerned whether the diocesan defendants failed to take appropriate action for the protection of the plaintiffs—a matter governed by tort law that did not require interpreting religious doctrine or ecclesiastical law. *Id.*

---

1. The *Isely* court concluded that the court could not consider claims based on negligent hiring and retention because they would involve interpreting canon law and internal church policies and practices, but that the court could consider a claim of negligent supervision. 880 F.Supp. at 1150–51. The *Gibson* court found that claims based on negligence were barred, but that the court could consider claims based on intentional torts. 952 S.W.2d at 246–49.

The court found tort law principles to be neutral and generally applicable and therefore not violative of the First Amendment. *Id.* at 80. The court noted that although the defendants claimed that canon law limited their ability to discipline priests, nothing suggested that canon law precluded officials "from taking appropriate action to *prevent* priests, who are known pedophiles, from sexually abusing children." *Id.* at 78. The court acknowledged that some individual claims might require deciding questions of church doctrine, but did not address individual claims as the defendants raised only a general challenge to the court's jurisdiction. *Id.* at 81.

¶ 21 In *Destefano v. Grabrian*, a husband sued a priest and the diocese after the priest, who had been acting as a marriage counselor, engaged in a sexual relationship with his wife. 763 P.2d 275, 277–78 (Colo.1988). The defendants moved to dismiss, arguing that sacramental counseling was an ecclesiastical matter and that the court could not interfere. *Id.* at 283. The court acknowledged that marital counseling might involve spiritual counseling as well, but concluded that the First Amendment did not immunize the defendants there because it was not alleged that the priest's sexual activity was conduct that "falls within the practices or beliefs of the Catholic church." *Id.* at 283–84.

¶ 22 In *Moses v. Diocese of Colorado*, the plaintiff sued a priest, a bishop, and the diocese after the priest, from whom she had sought counseling, entered into a sexual relationship with her. 863 P.2d 310, 313–14 (Colo.1993). She alleged torts of negligent hiring and supervision against the diocese and the bishop. *Id.* at 314. After a jury verdict in plaintiff's favor, the diocese and the bishop asserted on appeal that the First Amendment precluded recovery on the claims. *Id.* The court disagreed. The court recognized that it could not become involved in a dispute concerning a religious organization where it would have to interpret church doctrine. *Id.* at 320. The court concluded, however, that the case did not require interpreting or weighing church doctrine but could be resolved by applying neutral principles. *Id.* at 320–21. The court found that

claims of breach of fiduciary duty, negligent hiring and supervision, and vicarious liability were actionable if supported by competent evidence. *Id.* at 321.

¶ 23 In the recent case of *Malicki v. Doe*, the Florida Supreme Court found that claims of negligent hiring and supervision in a case involving a priest's sexual assault of parishioners could be addressed through the neutral application of tort law principles. 814 So.2d 347, 360–61 (Fla.2002). The court found that, because the prohibited behavior was not governed by sincerely held religious beliefs or practices, the First Amendment did not bar adjudication of the case. *Id.* at 361. The court noted that adjudicating a negligent hiring claim did not involve inquiry into the general reasons why an individual was hired for a particular position, but rather whether the specific danger that came to pass was reasonably foreseeable at the time of hiring. *Id.* at 362. The court found that the U.S. Supreme Court had not extended what it termed the "religious autonomy principle" beyond ecclesiastical intrachurch disputes. *Id.* at 363.

¶ 24 In the present case, Rashedi claims that she was injured by the tortious conduct of individuals whom church officials placed in a position to injure her when they knew or should have known of the risk of harm presented by those individuals. In our opinion, resolution of these claims does not require the interpretation of religious doctrine or ecclesiastical law; it requires application of tort law principles that are neutral and generally applicable.

¶ 25 The Board contends that, even if neutral principles of tort law applied, the court would still have to examine the structure of the Church of the Nazarene to properly define the duties of the various defendants. Maybe so. But the court can examine the structure of a religious organization for such a purpose. A court may examine religious documents so long as it is done in purely secular terms. *Wolf,* 443 U.S. at 604, 99 S.Ct. 3020. Any inquiry into the structure of the religious organization would not be undertaken to resolve any internal organizational dispute or the appropriateness of the conduct of the parties in relation to their

religious beliefs or obligations. Inquiry into the organizational structure would be to factually determine the roles the parties played in the licensing and hiring of an employee.

¶ 26 The District argues that Rashedi seeks to have it assert control over local churches and pastors in contradiction to the polity of the Church of the Nazarene, which precludes interference with the local church by the District. Rashedi's claims are not that broad. We also note that the Manual provides for the possibility of a district superintendent disapproving a proposed pastor to a local church. *Manual of the Church of the Nazarene* §§ 208.8, 208.11. Consequently, the application of neutral tort principles in this case does not conflict with the polity of the Church.

¶ 27 As in *Smith v. O'Connell,* the parties here have not specifically addressed individual claims at this stage of the litigation. Because the Board and District presented a general challenge to the court's jurisdiction to consider the case, we have addressed the matter generally.

¶ 28 Because of our resolution of the jurisdictional issue, we do not decide whether the trial court abused its discretion when denying Rashedi's Rule 56(f) motion or when including Rule 54(b) language in its dismissal order.

### III.

¶ 29 We conclude that the trial court erred in concluding that it lacked subject-matter jurisdiction to adjudicate any of Rashedi's claims against the Board and the District. The judgment of dismissal is therefore reversed and the matter is remanded to the trial court for further proceedings.

CONCURRING: JON W. THOMPSON, Presiding Judge, and SHELDON H. WEISBERG, Judge.