IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

---

In re the Marriage of:

QAMAR AHMED ALULDDIN, *Petitioner/Appellee*,

*v.*

ALI FARES JAWAD ALFARTOUSI, *Respondent/Appellant*.

No. 1 CA-CV 22-0642 FC
FILED 6-27-2023

---

Appeal from the Superior Court in Maricopa County
No.  FN2021-070819
The Honorable Stasy D. Avelar, Judge

**AFFIRMED**

---

COUNSEL

Riley Law Firm, Phoenix
By Daniel S. Riley
*Counsel for Respondent/Appellant*

Law Offices of Vescio & Seifert, P.C., Glendale
By Theresa L. Seifert
*Counsel for Petitioner/Appellee*

## OPINION

Judge Jennifer B. Campbell delivered the opinion of the Court, in which Presiding Judge Cynthia J. Bailey and Judge David D. Weinzweig joined.

**C A M P B E L L**, Judge:

¶1        Ali Fares Jawad Alfartousi (Husband) appeals the superior court's decree of dissolution of marriage awarding Qamar Ahmed Alulddin (Wife) $25,000 under their premarital agreement. He also appeals the court's award of attorney's fees to Wife. For the following reasons, we affirm.

## BACKGROUND

¶2        Before their marriage, Husband and Wife signed an Islamic marriage contract (the Agreement). The Agreement contained a dowry provision requiring Husband to pay Wife "an offered Dowry: $15,000.00 and a Postponed Dowry: $10,000.00 . . . when she demands it."[1] An Imam, the Wife's representative, and two other witnesses also signed the Agreement.

¶3        Five months later, the parties held two separate marriage ceremonies: a civil ceremony and an Islamic marriage ceremony. About a week after the second ceremony, the parties separated, and Wife petitioned to dissolve the marriage.

¶4        At trial, Wife presented the Agreement as a premarital agreement and asked the superior court to enforce its terms. She also requested that the court order Husband to return her jewelry. Husband objected to the court enforcing the Agreement, asserting that he had already paid Wife the $15,000 Dowry and arguing that he was responsible for the $10,000 Postponed Dowry only if *he* initiated the divorce. He also alleged that Wife had already taken her jewelry from his apartment.

¶5        Following trial, the superior court entered a dissolution decree, finding the Agreement enforceable and granting Wife a judgment

---

[1]        Dowry provisions like these are sometimes referred to as a *mahr* or a *sadaq*. *See, e.g.*, *Mahr*, Black's Law Dictionary (11th ed. 2019) ("A gift of money or property that must be made by a man to the woman he marries.").

against Husband in the amount of $25,000. The court also found that Husband took unreasonable positions in the divorce proceedings and awarded attorney's fees to Wife. After considering Wife's fee application and *China Doll* affidavit[2] — and noting Husband's failure to object — the court entered a separate judgment against him for Wife's attorney's fees.

¶6            Husband timely appealed both the decree and the judgment for attorney's fees.

## DISCUSSION

### I.        Enforceability of the Agreement

¶7            Husband argues that the free exercise clause of the First Amendment to the United States Constitution required the superior court to abstain from enforcing the Agreement. Properly framed, Husband challenges the superior court's jurisdiction to enforce the dowry provisions of the Agreement. Although he failed to squarely raise this claim in the superior court, a challenge to subject matter jurisdiction may be raised at any stage of the proceedings. *Olesen v. Daniel*, 251 Ariz. 25, 28, ¶ 9 (App. 2021).

¶8            Whether a court has jurisdiction to adjudicate a claim is a question of law we review de novo. *See Rashedi v. Gen. Bd. of Church of Nazarene*, 203 Ariz. 320, 323, ¶ 13 (App. 2002). We also review de novo a court's determination of the enforceability of a premarital agreement. *In re Marriage of Pownall*, 197 Ariz. 577, 580, ¶ 7 (App. 2000). We review a court's factual findings for an abuse of discretion and "reverse only when clearly erroneous." *In re Marriage of Gibbs*, 227 Ariz. 403, 406, ¶ 6 (App. 2011).

¶9            The First Amendment provides, in pertinent part, that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof[.]" U.S. Const. amend. I. Referred to as the "establishment and free exercise clauses," these constitutional provisions apply to the states through the Fourteenth Amendment. *Cantwell v. Connecticut*, 310 U.S. 296, 303 (1940).

¶10           The doctrine of ecclesiastical abstention, derived from the establishment and free exercise clauses, precludes civil courts from inquiring into ecclesiastical matters, such as those concerning "theological controversy, church discipline, ecclesiastical government, or the conformity of the members of the church to the standard of morals required for

---

[2]         *Schweiger v. China Doll Rest., Inc.*, 138 Ariz. 183 (App. 1983).

them." *Ad Hoc Comm. of Parishioners of Our Lady of Sun Catholic Church, Inc. v. Reiss*, 223 Ariz. 505, 510, ¶ 12 (App. 2010) (quoting *Watson v. Jones*, 80 U.S. 679 (1871)). "Thus, if the subject matter of [a party's] dispute is ecclesiastical, we lack jurisdiction to resolve those claims." *Id.* at 512, ¶ 18.

¶11        But the First Amendment does not excuse individuals from complying with valid secular laws. *Rashedi*, 203 Ariz. at 324, ¶ 16. Courts of law may adjudicate disputes arising in religious contexts "by applying neutral principles of law without inquiry into religious doctrine and without resolving a religious controversy[.]" *Id.* at ¶¶ 15–16. In other words, courts "may interpret provisions of religious documents involving property rights and other nondoctrinal matters as long as the analysis can be done in purely secular terms." *Dobrota v. Free Serbian Orthodox Church St. Nicholas*, 191 Ariz. 120, 126, ¶ 24 (App. 1998) (internal quotation omitted); *see also Jones v. Wolf*, 443 U.S. 595, 602–04 (1979) (concluding that courts have jurisdiction to hear disputes over church property that may be settled based on secular law and without considering religious beliefs or policies). To be clear, courts may address a broad range of matters that arise in religious contexts, "even if some ecclesiastical matters are incidentally involved," provided they rely on neutral principles of law, *Dobrota*, 191 Ariz. at 126, ¶ 22, and do not attempt to "interpret[] religious doctrine or practice," *Rashedi*, 203 Ariz. at 324, ¶ 14. "The doctrine of ecclesiastical abstention does not apply whe[n] [a] dispute can be resolved without inquiry into religious law or polity." *Dobrota*, 191 Ariz. at 126, ¶ 23.

¶12        Arizona courts have not decided whether a court has jurisdiction to enforce the financial provisions of a religious marriage contract. *Cf. Ball v. Ball*, 250 Ariz. 273, 280–81, ¶ 25 (App. 2020) (noting court should abstain from inquiring into whether the father's church was a "Christian" church under the religious-education provision of parties' parenting plan); *Victor v. Victor*, 177 Ariz. 231, 234 (App. 1993) (abstaining from considering whether the parties' religious marriage contract contained an unwritten mandate that required the husband to grant a Jewish divorce to the wife). Courts in other jurisdictions, however, have resolved the enforcement of religious marriage contracts under neutral principles of law, meaning without implicating the ecclesiastical abstention doctrine.

¶13        Applying neutral principles of law, most courts have found the financial provisions in religious marriage contracts enforceable. *See, e.g., Parbeen v. Bari*, 337 So.3d 343, 345 (Fl. App. 2022) (finding that Islamic *mahr* was enforceable under laws governing prenuptial agreements); *Ravasizadeh v. Niakosari*, 112 N.E.3d 807, 812–13 (Mass. Ct. App. 2018) (holding that an

Iranian marriage *mahr* was enforceable in a divorce proceeding because the *mahr* was a contract under neutral principles of law); *Odatalla v. Odatalla*, 810 A.2d 93, 96–97 (N.J. Ct. App. 2002) (concluding that *mahr* could be enforced by applying neutral principles of contract law); *but see In re Marriage of Shaban*, 105 Cal. Rptr. 2d 863, 869 (Cal. Ct. App. 2001) (concluding that for a premarital agreement to satisfy the statute of frauds, it must state with certainty the terms and conditions of the prenuptial agreement and the dowry provisions in the Islamic marriage contract were the "only thing that bears any resemblance to a material term"); *In re Marriage of Dajani*, 251 Cal. Rptr. 871, 872–73 (Cal. Ct. App. 1988) (concluding that an Islamic marriage contract was unenforceable for public policy reasons because it provided a payment only in the event of a divorce), *criticized in In re Marriage of Bellio*, 129 Cal. Rptr. 2d 556, 559 (Cal. Ct. App. 2003) ("*Dajani* was wrongly decided."); *In re Marriage of Noghrey*, 215 Cal. Rptr. 153, 156 (Cal. Ct. App. 1985) (concluding that prenuptial agreement, while not in itself illegal or void, was unenforceable because it was against public policy to provide the wife with an award of property only if the parties divorced).

¶14        Other courts have applied neutral principles of law and found such agreements invalid. *See, e.g.*, *In re Marriage of Obaidi*, 226 P.3d 787, 790, ¶¶ 18–21 (Wash. App. 2010) (applying neutral principles of contract law to Islamic marriage agreement, there was no meeting of the minds between the parties because the husband was not told that he would be signing the agreement until 15 minutes beforehand and because the agreement was written in Farsi, a language the husband could not speak, write, or read); *Zawahiri v. Alwattar*, 2008-Ohio-3473, 2008 WL 2698679, at * 6, ¶ 23 (Ohio Ct. App. July 10, 2008) (applying ordinary contract law, finding that the contract was not void as Islamic or foreign, but rather was unenforceable as it was entered into under duress). To reiterate, these courts applied neutral principles of law to analyze the issue and did not determine that the ecclesiastical abstention doctrine, as a matter of law, precludes the legal enforcement of religious marital contracts.

¶15        We find the neutral principles of law approach adopted in *Nouri v. Dadgar*, 226 A.3d 797 (Md. App. 2020), particularly instructive. In that case, the Maryland Court of Special Appeals found religious premarital agreements enforceable in divorce cases if the agreements meet the requirements applicable to premarital agreements and other contracts between people in confidential relationships. *Nouri*, 226 A.3d at 802. The appellate court consolidated two divorce cases for the purpose of its opinion. *Id.* In both cases, the couples held a civil marriage ceremony and a separate Islamic marriage ceremony. *Id.* at 803. In connection with the

Islamic ceremonies, the couples entered Islamic marriage contracts that contained a *mahr*—a financial provision that required the husbands to pay a quantity of gold coins to their respective wives. *Id.* Later, the wives filed for divorce and both cases were heard by the same trial court judge. *Id.* at 805, 807. The trial court found the *mahrs* enforceable under neutral principles of contract law and entered judgments in favor of the wives. *Id.* at 806–07.

¶16 On appeal, the husbands challenged the enforceability of the *mahrs* on several grounds, including under the free exercise clause of the First Amendment. *Id.* at 808. The court of appeals rejected the husbands' argument that *mahrs*, in general, cannot be enforced without violating the United States Constitution. *Id.* at 810–11. Instead, concurring with the trial court, the appellate court held that "*mahrs* may, in principle, be enforced as secular contracts *if* they are enforceable under neutral principles of contract law." *Id.* at 808. But disagreeing that *mahrs* could be interpreted as standard contracts, the appellate court held that "because both contracts . . . were entered in contemplation of marriage, the applicable secular legal framework is that governing agreements entered into by parties in a confidential relationship." *Id.* at 809, 811. For this reason, the appellate court vacated the judgments and remanded the cases to the trial court to consider whether the *mahrs* met the heightened evidentiary standard applicable to contracts in which the parties are in confidential relationships. *Id.* at 814–15, 817.

¶17 Husband urges us to reject the neutral principles of law approach adopted in *Nouri*. That approach, he contends, is flawed because it requires the court to consider expert testimony regarding Islamic divorce customs and assume the role of a religious court. He goes on to argue that the approach is illogical because an Islamic marriage contract has no discernible neutral meaning when made in a religious setting and written in religious terminology.

¶18 Husband's claims are belied by the record. In this case, the superior court limited its analysis to the language in the Agreement and did not consider religious doctrines or customs. By its plain terms, the Agreement required Husband to pay Wife a total dowry of $25,000 "when she demands it." These clear, unambiguous contractual provisions are subject to interpretation under neutral principles of law. *See Skydive Ariz., Inc. v. Hogue*, 238 Ariz. 357, 367, ¶ 40 (App. 2015) (noting that when the terms of an agreement are clear and unambiguous, the superior court must give effect to them as written). Thus, the superior court did not need to

assume the role of a religious court or consider ecclesiastical matters forbidden by the First Amendment to enforce the agreement as written.

**¶19** Adopting the approach taken in *Nouri*, we conclude that the superior court had jurisdiction to enforce the Agreement by applying the neutral principles of law that govern premarital agreements. Turning to those neutral principles, Husband first argues that the Agreement was invalid because the parties did not make it "in contemplation of marriage." He also argues that it is unenforceable because he did not sign it voluntarily.

**¶20** Although defenses to contract formation, such as coercion and unconscionability, apply to premarital agreements, A.R.S. § 25-202(C), Husband raised neither of these arguments in the superior court. Generally, a party cannot argue on appeal legal issues and arguments that have not been specifically presented to the superior court. *Sobol v. Marsh*, 212 Ariz. 301, 303, ¶ 7 (App. 2006). The waiver rule, however, is procedural rather than jurisdictional, *Azore, LLC v. Bassett*, 236 Ariz. 424, 426–27, ¶ 7 (App. 2014), and in our discretion, we address Husband's claims, *see Harris v. Cochise Health Sys.*, 215 Ariz. 344, 349, ¶ 17 (App. 2007).

**¶21** A premarital agreement is "an agreement between prospective spouses that is made in contemplation of marriage and that is effective on marriage." A.R.S. § 25-201(1). To be valid, it "must be in writing and signed by both parties." A.R.S. § 25-202(A). It "is enforceable without consideration." *Id*.

**¶22** Husband contends that the parties did not enter into the Agreement in contemplation of marriage because under Islamic law the Agreement constituted their marriage. The record controverts this contention. The parties signed the Agreement five months before their legal marriage. Although Husband testified that it signified their cultural marriage, he also stated that they signed it on their "engagement." Moreover, he testified that their actual marriage occurred after the execution of the Agreement. Based on the record, we discern no error in the superior court's finding that the parties executed the Agreement in contemplation of marriage.

**¶23** Next, Husband asserts that he did not sign the Agreement voluntarily because it was a compulsory religious act. A premarital agreement is unenforceable if the spouse against whom enforcement is sought proves he or she did not execute the agreement voluntarily. A.R.S. § 25-202(C)(1). The spouse who seeks a declaration that a premarital

agreement is unenforceable has the burden of proving the agreement is invalid. *See Pownall*, 197 Ariz. at 580, ¶ 8.

**¶24** Here, the superior court did not err in finding that Husband failed to meet his burden of proof. He did not present any evidence to suggest that his religion "mandated" or "compelled" him to sign the Agreement. In his prehearing statement, he described the Agreement as "customary"—not compulsory—in a Muslim marriage. He later testified that Wife brought it to their meeting with the Imam and that he had "no problem" with her doing so. Additionally, the Agreement states the dowry provisions were "completed by the acceptance and approval of both sides[.]"

**¶25** Given these facts, Husband failed to show that he did not voluntarily enter the Agreement. He also failed to meet his burden of showing that it was unenforceable. Under the circumstances of this case, we discern no error in the superior court's enforcement of the Agreement under the neutral principles of law applicable to premarital agreements.

## II. Attorney's Fees in the Superior Court

**¶26** As a final matter, Husband challenges the superior court's award of attorney's fees to Wife. We review the award of attorney's fees under A.R.S. § 25-324(A) for an abuse of discretion. *Lehn v. Al-Thanayyan*, 246 Ariz. 277, 286, ¶ 29 (App. 2019). In determining whether attorney's fees should be awarded in a divorce proceeding, the court is required to consider "the financial resources of both parties and the reasonableness of the positions each party has taken throughout the proceedings." A.R.S. § 25-324(A).

**¶27** Husband asserts his positions in the divorce proceedings were reasonable because the enforceability of an Islamic marriage contract is a matter of significant disagreement among the states. Husband, again, waived this argument by failing to raise it before the superior court. *See Sobol*, 212 Ariz. at 303, ¶ 7.

**¶28** Moreover, as framed in the superior court, Husband's actual positions were much less reasonable. He argued that he had already paid Wife the $15,000 Dowry and that she was not entitled to the $10,000 Postponed Dowry because she initiated the divorce. He also argued that Wife was wearing her jewelry when she left the apartment or, in the alternative, that she had returned to the apartment when he was not there and collected it.

¶29 The record reasonably supports the superior court's ruling. The court found Husband's testimony was "not credible" about Wife's jewelry and rejected his interpretation of the Agreement as "not supported by the document itself." The court also found, based on his testimony, that he had not paid Wife either the $15,000 Dowry or the $10,000 Postponed Dowry. On these facts, we discern no abuse of discretion.

## III.   Attorney's Fees and Costs on Appeal

¶30 Wife requests her attorney's fees on appeal under A.R.S. § 25-324(A). We lack any information regarding the parties' current financial resources. Furthermore, the parties have taken reasonable positions in this appeal. We therefore decline to award attorney's fees. Wife is the successful party in this appeal and may recover her taxable costs upon compliance with ARCAP 21. *See* A.R.S. § 12-341.

## CONCLUSION

¶31 For the foregoing reasons, we affirm the superior court's rulings.

